**SIGNED THIS: December 19, 2019**

_____
**Mary P. Gorman**
**United States Bankruptcy Judge**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re | ) | Case No. 18-91109 |
| | ) | |
| SHAWN B. HILLS, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| _____ ) | | |
| | ) | |
| SHAWN B. HILLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. No. 19-09002 |
| | ) | |
| FIRST FINANCIAL BANK, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

## **O P I N I O N**

Before the Court are ten motions to disqualify judge—a Motion for
Disqualification Such that Further Proceedings are Treated Impartially by

Successor Judge, Motion to Reopen for Relief from Erroneous Orders Entered, in Part, From Reckless Assumptions, and From Judge's Reliance on False Statements Intentionally Made by the Court's Own Officers, and Motion for Leave to File the Attached Notice of Appeal Under Extended Time, filed August 16, 2019; a Second Motion to Disqualify and Motion to Extend Time by One Day, a Third Motion to Disqualify Adding #50 Recusal Refusal Errors, a Fourth Motion to Disqualify and Response to Motion to Seal Document, and a Fifth Motion to Disqualify and Showing of Good Cause, all filed September 5, 2019; a Sixth Motion to Disqualify (This Time for Criminal, False, and Retaliatory Statements to this Court) and Motion to Set Aside Offending Order, filed September 26, 2019; a Seventh Motion to Disqualify and Reply to Interested Party's #64 Response, and an Eighth Motion to Disqualify and Reply to Defendant's #63 Response, both filed October 15, 2019; and a Ninth Motion to Disqualify and Response to Interested Party's (#62) Second Motion for 9011 Sanctions, and another Seventh Motion to Disqualify and Reply to Responsive *Objection to Sixth Motion and Motion for Sanctions Under 28 U.S.C. § 1927*, each filed October 22, 2019.

The motions filed by the Debtor and his attorney, Brian Sides, all contain angry, intemperate comments about the Court, Mr. Sides' former personal and business partner, Cristina Manuel, and her attorney. All of the motions distort the record in this proceeding, and none of the motions cite legal authority that supports the relief requested. For the reasons set forth herein, all ten motions to disqualify will be denied.

## I. Factual and Procedural Background

Shawn B. Hills ("Debtor") filed his voluntary petition under Chapter 7 of the

Bankruptcy Code on October 31, 2018. Attorney Cristina Manuel prepared the Debtor's petition and schedules and represented him in his bankruptcy case. On his Statement of Financial Affairs ("SOFA"), the Debtor disclosed $912.13 in prepetition payments through a wage garnishment by First Financial Bank, N.A. ("FFB"), within three months prior to filing. The Debtor's SOFA also disclosed $1318.88 in garnished wages in favor of FFB between June 22, 2018, and October 26, 2018. On his Schedule A/B: Property, the Debtor asserted having an avoidance claim against FFB for the prepetition garnished wages in the amount of $912.13. The Debtor also claimed as exempt the $912.13 in wages garnished by FFB.[1]

In December 2018, the Chapter 7 case trustee, Roger Prillaman, filed his Report of No Distribution, stating that he had made a diligent inquiry into the financial affairs of the Debtor and concluded that there was no property available for distribution from the estate over and above that exempted by law. The Debtor received his discharge on February 25, 2019.

On January 13, 2019, the Debtor filed this adversary proceeding against FFB for the recovery of $912.13 garnished during the 90-day prepetition preference period. The complaint was filed by Attorney Brian K. Sides. Attached to the complaint as an exhibit was an accounting prepared by the Debtor or his attorney purporting to show the garnished amounts deducted from each of the

---

[1] The Debtor claimed the exemption in the garnished wages under the personal property wild card exemption pursuant to 735 ILCS 5/12-1001(b). Illinois personal property exemption provisions specifically provide, however, that they "shall not apply to or be allowed against any money, salary, or wages due or to become due to the debtor that are required to be withheld in a wage deduction proceeding[.]" 735 ILCS 5/12-1001(j). Neither the case trustee nor any other party objected to the Debtor's exemption claim.

Debtor's pay checks in the months prior to the petition date.

Within the time to respond to the complaint, FFB, through its attorney, Jeffrey D. Richardson, filed a Motion to Extend Time for Defendant to Plead. In its motion, FFB alleges that "[t]wo of the last three checks identified in Exhibit 'A' to the Complaint were never received and the one check which the Defendant did receive was returned uncashed making the amount received and retained by the Defendant during the preference [period] $504.87, less than the minimum preference threshold." Based on that information, FFB asked for an extension of time to file a responsive pleading so that the Debtor could have an opportunity to determine whether to proceed under the circumstances. Ultimately, however, FFB filed an answer to the complaint, admitting that it had received and cashed four checks from the garnishment during the preference period totaling $504.87 and denying all other allegations.

A Notice of Pretrial Conference and Pretrial Order was issued, scheduling the matter for a telephonic conference to be held May 9, 2019. The Pretrial Order directed the parties to "confer as required by Fed. R. Civ. P. 26(f) and to complete the initial disclosures required by Fed. R. Civ. P. 26(a)(1) prior to the pretrial conference." The parties were further ordered to prepare and file a pretrial statement not later than three days prior to the pretrial conference. The order provided instructions as to how the pretrial statement should be constructed and what it should include, specifically noting that it was to be a "JOINT DOCUMENT" and that it was the responsibility of the Plaintiff—in this case the Debtor—to initiate the preparation of the pretrial statement.

On April 3, 2019, the Debtor, through Attorney Sides, unilaterally filed a

"Pretrial Statement," taking issue with FFB's answer to the complaint. According to the filing, the issues before the Court were whether FFB could "strip the Court of its jurisdiction by returning to a plaintiff enough money to cause the amount owed to be reduced below $600[,]" and, in such case, whether "a plaintiff ha[s] a duty to mitigate damages, trapping him into accepting a partial return of the garnishment, hence lowering the garnished total lower than $600, and thereby leaving plaintiff no recourse for an amount up to $599.99[.]"

Two weeks later, Mr. Sides filed a Request for Temporary Restraining Order and Motion to Supplement Complaint by Adding a Party (Attorney Cristina Marie Manuel), a New Count, and a New *Ad Damnum* Clause ("Motion to Supplement"), seeking to (1) temporarily restrain Attorney Manuel from "damaging, destroying, or altering data and to further protect and maintain said data from accidental damage" relating to information that he alleged "Ms. Manuel removed from Plaintiff's counsel's laptop via the internet and without authority," and (2) supplement the complaint under Federal Rule of Civil Procedure 15(d) and Federal Rule of Bankruptcy Procedure 7015 by adding Ms. Manuel as a party and adding a new count for Ms. Manuel's "various acts against" the Debtor and Mr. Sides.

In the Motion to Supplement, Mr. Sides detailed the background of his personal and business relationship with Ms. Manuel. He recounted that the two met in law school and later became law partners and started a family together. They lived together until February 2019 when there was an apparent breakdown in their relationship. As Mr. Sides framed it, upon his return from a personal trip to Florida to alleviate his symptoms associated with seasonal affective disorder, he came home "to find a 'Dear John' letter on the recliner in his living room that

falsely accused him of acts which Cristina contended was the cause for her withdrawal from the relationship." Mr. Sides alleged that he then "further discovered that without notice to or discussion with Mr. Sides, Ms. Manuel chose to exact many harmful acts upon Mr. Sides, Mr. Sides' personal property, and worst of all his children." He also stated that "Ms. Manuel had hired an attorney to open a Family case against him in county Court." Mr. Sides complained that, after the family court case was filed, he was forced to hire a family law attorney and attend court appearances. The Motion to Supplement included references to the minor children by name and birth date.

Mr. Sides described at length his personal struggles in maintaining his relationship with his children thereafter and accused Ms. Manuel of taking his personal property when moving out of their previously shared home. According to the Motion to Supplement, Mr. Sides was also served a petition for an order of protection, which he described  as "an effort to usurp the county court's authority over parenting time and decision making and to deny Mr. Sides access to his children for two years," and as an attempt to "bootstrap (false) allegations of abuse occurring more than a decade prior." Although the petition for order of protection was apparently denied, Mr. Sides accused Ms. Manuel of repeatedly using such legal avenues as a way of negotiating parenting time and decision making to her benefit.

The Motion to Supplement also outlined a series of events beginning April 2, 2019, when Mr. Sides started receiving notifications about numerous login attempts into a financial account of his, which he attributed to Ms. Manuel. Mr. Sides claimed that something similar had happened in February of the same year

and that Ms. Manuel had admitted accessing his account.

In his Motion to Supplement, Mr. Sides also accused Ms. Manuel of removing "several keys from his personal keyring[,]" including keys to a storage unit, their law office, and the office mailbox. As a result, Mr. Sides claimed to have been denied access to his personal property located within the office, including "multi-function document machines, chairs, a desk, regular and horizontal file cabinets, a shredder, an Atomic clock, decorations and stationary supplies[.]" Mr. Sides also made reference to some "tools and electrical appliances located at a campground[.]"

In addition, Mr. Sides accused Ms. Manuel of accessing a storage unit rented solely in Mr. Sides' name and removing thirty-four banker's boxes of closed case files from the couple's law partnership. According to Mr. Sides, because Ms. Manuel had taken his key to the storage unit, he was forced to cut the lock and buy a replacement. Mr. Sides also claimed that Ms. Manuel "denied him access to the Partnership client and professional contacts, the Partnership email account, other electronic accounts, and converted Mr. Sides (sic) funds from multiple financial accounts." He claimed that, in the process of dissolving the law partnership, Ms. Manuel merely issued Mr. Sides a check, which was purported to be in full settlement of the partnership accounts, although he said he was denied access to partnership financial records, thereby suggesting wrongdoing on the part of Ms. Manuel. Mr. Sides argued that Ms. Manuel's acts constituted theft under Illinois law.

Finally, Mr. Sides made a variety of accusations regarding his or the partnership's information technology. He stated that, as of February 7, 2019, Ms.

Manuel had denied him access to a cellular phone that was used for the law partnership. Mr. Sides apparently obtained a new phone and telephone number and later backed up the information from his old phone to his cloud-based Dropbox file-storage account. Mr. Sides said that, on April 5, 2019, he began receiving alerts that files in the Dropbox account were being deleted or removed. He alleged that Ms. Manuel deleted, removed, or altered at least 371 files for the purpose of frustrating the Debtor's case and to exact harm on the Debtor and Mr. Sides. As it related to the Debtor's adversary proceeding, Mr. Sides said that, as far as he was aware, the following files were removed from Dropbox: (1) a copy of the Debtor's paystubs for the period relevant to the complaint in PDF format; (2) a folder named "Hills Research;" (3) a PDF and DOC version of the exhibit file uploaded with the complaint; (4) a document containing hyperlinks related to research; (5) a sample adversary complaint used for the case in PDF format; (6) a folder named "Complaint;" (7) another adversary complaint in PDF format authored by attorneys from Jenner and Block; (8) PDF and DOC versions of the complaint filed in this adversary proceeding; and (9) "a file containing Mr. Sides' review of Federal Rule of Civil Procedure 26 for the purpose of complying with this Court's pre-trial order." Mr. Sides pointed out that the deletion or removal of files occurred more than a month after the apparent dissolution of the law partnership. He stated that he asked Ms. Manuel to return the files, but Ms. Manuel refused. Mr. Sides accused Ms. Manuel of violating Illinois and federal law regarding crimes that are electronic in nature.

In its prayer for relief, the Motion to Supplement asked the Court to "(1) temporarily restrain Ms. Manuel from damaging, destroying, or altering data Ms.

Manuel removed from Mr. Sides' laptop and to further protect and maintain said data from accidental damage, (2) permit the supplement of his Complaint by adding Ms. Manuel as a party and by adding a new count related to her acts against Plaintiff and Plaintiff's counsel, (3) permit a supplemental prayer for relief which requests Ms. Manuel to return all removed data in an unaltered state to Petitioner's counsel, (4) permit the seeking of costs and fees of the supplement due to Ms. Manuel's illicit acts, and (5) for any further relief the Court finds Just." Attached to the Motion was a "Notice of Withdrawal from Partnership" indicating Ms. Manuel's withdrawal as of February 21, 2019, an accounting bearing the heading "Manuel & Sides Law Office Dissolution Settlement #1 issued 3/12/2019," and a copy of a bank check from the partnership account in favor of Brian Sides for the amount owed based on the accounting in the Dissolution Settlement. The account and routing numbers on the bank check were not redacted, and the Dissolution Settlement itself contained the names and financial information of several of the partnership's clients.

On April 16, 2019, the day after the Motion to Supplement was filed, the Court entered an order setting the motion for hearing the following week and restricting electronic access to the Motion to Supplement and its attachments.[2] Mr. Sides' presence at the hearing was required. Prior to the hearing on the

---

[2] The original order setting hearing and restricting electronic access inadvertently set the Motion to Supplement for May 23, 2019. An amended order was promptly entered to correct the hearing date, changing it to April 23, 2019. The orders required Mr. Sides to serve a copy of the hearing notice on Ms. Manuel and to file a proof of service. When Mr. Sides filed a certificate of service of the original order on Ms. Manuel, the Court issued a deficiency notice stating that the certificate of service must include the Amended Order to Correct Hearing Date. Mr. Sides promptly filed his amended certificate of service indicating service of the amended order on Ms. Manuel.

Motion to Supplement, Ms. Manuel, through her attorney, filed a Motion to Strike Pleading Pursuant to Rule 12(f) or in the Alternative Motion to Dismiss Pursuant to Rule 12(b) and Motion for Sanctions Under Federal Rule 11 ("Motion to Strike and Motion for Sanctions"), asking the Court to (a) strike the Motion to Supplement as redundant, immaterial, impertinent, or scandalous, (b) dismiss the matter for lack of subject matter jurisdiction and personal jurisdiction, and (c) impose sanctions against Mr. Sides for violating Federal Rule of Civil Procedure 11 by presenting unfounded matters for improper purposes, namely a means of disparaging, intimidating, and harassing Ms. Manuel in a public forum. Copies of the state court docket and an email chain regarding the mailing of discovery requests in the Debtor's adversary proceeding were attached as exhibits. One of the emails that appears to have been sent by Mr. Sides to Ms. Manuel on April 4, 2019, contains the subject line: "a federal criminal complaint, J. Gorman's disdain, the ARDC: all problems you created for yourself!" The body of the email includes the statement: "Your childish antics are about to reach Judge Gorman and the ARDC."

On April 23, 2019, prior to the hearing on the Debtor's Motion to Supplement, Mr. Sides filed a second Motion to Supplement Complaint by Adding a Party (Attorney Cristina Marie Manuel), a New Count, and a New *Ad Damnum* Clause ("Second Motion to Supplement"), largely repeating the allegations set forth in the original Motion to Supplement but including new allegations that Ms. Manuel had denied Mr. Sides access to the family pets. Mr. Sides also claimed to have proof that Ms. Manuel deleted or removed the files in his Dropbox account, which was a purported transcript of his conversation with a Dropbox support

representative that he attached as an exhibit to the motion. Other attachments included a copy of his Proposed Supplemented Complaint, screen-shots of his Dropbox account, copies of the same Notice of Withdrawal from Partnership, Dissolution Settlement, and bank check attached to the original motion, a heavily redacted letter addressed to Mr. Sides, and a series of emails between Ms. Manuel and Mr. Sides.[3] As with the original motion, the children's birth dates, the bank account and routing numbers on the check, and clients' personal information was not redacted. In addition, the various emails attached to the Second Motion to Supplement included the minor children's names.

Mr. Sides also filed his Evidentiary Reply to Ms. Manuel's (Doc #26) Responsive Challenge for Evidence and Reply to (Doc #26) Responsive Motions to Strike and/or Dismiss, defending his filing of the Motions to Supplement while also acknowledging his inexperience in filing such motions and speculating that the Court restricted electronic access to the original Motion to Supplement "due to the unfortunate and eyebrow-raising allegations regarding an officer of this Court and that those allegations are simply yet to be proven as fact." He stated that he filed the Second Motion to Supplement to bolster his claims and provide evidentiary support with the understanding that the Court might still restrict electronic access to the filing if it deemed necessary. In response to Ms. Manuel's Motion to Strike and Motion for Sanctions, Mr. Sides claimed that, contrary to Ms. Manuel's assertions, substantial portions of his Motions to Supplement were dedicated to a discussion of her illicit acts having caused the Debtor harm, that

---

[3] With the exception of one email asking for the Debtor's phone number, all of the emails pertained exclusively to the personal and family relationship of Mr. Sides and Ms. Manuel.

he was not trying to litigate or relitigate state court issues between the two of them, that several of the allegations were necessary background information and therefore not raised for an improper purpose, that his Motions to Supplement were procedurally proper or that any defect was minor, and that the Court had jurisdiction because Mr. Sides served the motions on Ms. Manuel and because the Court has broad power to grant any relief sought under the federal procedural rules.

The hearing on the original Motion to Supplement occurred as scheduled on April 23, 2019. The Court began the hearing by stating that it had read all the filings related to the Motion to Supplement—including Ms. Manuel's Motion to Strike and Motion for Sanctions and Mr. Sides' response thereto, as well as Mr. Sides' Second Motion to Supplement—and that it was prepared to rule on the matter without further argument.[4] The Court stated that it had sealed the original Motion to Supplement and had sealed the Second Motion to Supplement when it was filed because "they contained a significant amount of information about the parties' children."[5] Specifically, the Court noted that the inclusion of minor children's birth dates, especially in a proceeding apparently brought on the

---

[4] The Court uses CourtSpeak software to record all hearings in a manner that allows for the audio of each hearing to be posted in PDF format to the docket shortly after the conclusion of a hearing. All hearings in this proceeding were recorded in this manner, and the audio recordings were posted and remain available. Parties to a case or proceeding receive one free listen to the audio and may save the audio for future references. Regular PACER charges apply for subsequent listenings if the audio is not saved. The Court's statement that the matter would be decided without further argument was consistent with the Local Rules of the District Court for the Central District of Illinois, which provide that oral argument on motions is not required and that parties that want argument must request argument in their motions and specifically identify the matters to be argued. CDIL-LR 7.1(A). Neither Mr. Sides nor any other party requested argument or identified any issues to be argued.

[5] The Court stated that it had "sealed" the documents, but, in fact, it had restricted electronic access to court personnel.

unrelated Debtor's behalf, was extremely problematic. The Court explained that, while it generally does not police every filing for identifying information, when it sees things involving children it does sometimes step in to restrict access by the public.

As for Mr. Sides' request for a temporary restraining order and to supplement the Debtor's complaint to add Ms. Manuel as a defendant, the Court denied both requests. It explained that the Motion to Supplement, including the request for a temporary restraining order, was, procedurally, wholly deficient.[6] That notwithstanding, the Court also explained that it did not have subject matter jurisdiction to hear the matters raised by Mr. Sides.[7] At one point during the hearing, the Court stopped to admonish Mr. Sides, telling him not to make faces and to "just stand there professionally and hear this." To which Mr. Sides said, "I'm just digesting; I'm sorry." The Court explained that it understood that no one

---

[6] A request for a temporary restraining order in bankruptcy is an adversary proceeding that must generally be commenced by the filing of a complaint. Fed. R. Bankr. P. 7001(7); *In re Perkins*, 902 F.2d 1254, 1258 (7th Cir. 1990). The party seeking injunctive relief cannot simply pick a pending adversary of an unrelated party and obtain a temporary restraining order against a third party. Nor can it be accomplished by simply moving to supplement an existing complaint where the existing claim and parties are unrelated. Federal Rule of Civil Procedure 15(d) allows for supplemental pleadings setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. But one cannot create jurisdiction through a supplemental complaint. The supplemental facts must connect it to the original complaint. *American Bio Medica Corp. v. Bailey*, 341 F. Supp. 3d 142, 148 (N.D.N.Y. 2018). Here, Mr. Sides' requests for relief against Ms. Manuel bore no connection to the Debtor's preference claim for garnished wages against FFB. His Motions to Supplement and Motion for Temporary Restraining Order were accordingly denied.

[7] Bankruptcy Courts have exclusive jurisdiction over cases "arising under title 11," and concurrent jurisdiction over matters "arising in or related to cases under title 11." 28 U.S.C. §1334. Mr. Sides' claims against Ms. Manuel do not "arise under" the Bankruptcy Code. Nor do they arise in or relate to a case under title 11. In order for a claim to be "related to a case under title 11," it must have a direct impact on the estate. *In re Spaulding & Co.*, 111 B.R. 689, 693 (Bankr. N.D. Ill. 1990) (stating that it is the relationship to the estate, and not a party to the estate, that establishes jurisdiction). Mr. Sides' claims against Ms. Manuel would have no impact on the Debtor's estate and therefore do not fall within this Court's jurisdiction.

wanted to be before the Court under the circumstances and that it took no pleasure in giving its decision in the way it was being given. But the Court stressed that there was no reason for Mr. Sides to have told the Court all of the details of the break up of his personal and business partnership with Ms. Manuel. The Court stated that it was not going to make a finding that the Motions to Supplement were filed for an improper purpose but that it could find no good purpose for them being brought. Noting that it understood that there was a "tiny little sliver" of the allegations that could have in some way impacted the Debtor's lawsuit against FFB, the Court stressed that there were other ways to address those issues. One of those ways was to have the Debtor personally ask Ms. Manuel—his attorney in the main bankruptcy case—for his case file that would presumably include most if not all of the information required to prosecute his adversary claims. Alternatively, Mr. Sides could have exercised the subpoena power that comes with the commencement of an adversary proceeding, as well as a variety of other discovery tools to get the information he needed.

Moving to the merits of the Debtor's preference claim against FFB, the Court observed that the amount at stake was, at most, about $900. Setting aside the fact that FFB's defense was that it received less than $600 in the 90 days prior to the case filing,[8] the Court explained that the law was split on the issue of whether a debtor could file a preference complaint and that, even if this Debtor could file a preference complaint, that would not mean that the recovered amount would

---

[8] Section 547(b) provides that "except as provided in subsections (c) and (i) of this section," the trustee may avoid any transfer made within the 90 days preceding the date of filing the petition. 11 U.S.C. §547(b)(4). Section 547(c)(8) provides that a transfer totaling less than $600 cannot be avoided as a preference in an individual consumer case. 11 U.S.C. §547(c)(8).

-14-

necessarily go to him.[9] All of this was to say that it seemed like an inefficient use of resources to try to recover such a modest amount. Noting the Debtor's absence from the hearing, the Court raised concerns about whether any of the matters raised by the Motions to Supplement were brought for the Debtor's benefit.

With regard to Ms. Manuel's Motion to Strike and Motion for Sanctions, the Court denied the requests to strike and dismiss as moot, having denied the underlying request of Mr. Sides, stating, "That's all I can do." As for the issue of sanctions, the Court again acknowledged that the Motions to Supplement should not have been filed but declined to impose sanctions, in part, because the request did not comply with the safe harbor provisions of Federal Rule of Civil Procedure 9011.[10] But the Court made clear that the filing of the Motions to Supplement was wholly unprofessional and told Mr. Sides that if he were to file anything like them again, he would be sanctioned on the Court's own motion and that, in such an instance, he would not be entitled to the benefit of the safe harbor provision of

---

[9] Many courts recognize that Chapter 7 and Chapter 13 debtors generally do not have standing to bring a preference action under §547. *E.g.*, *In re Garcia*, 260 B.R. 622, 635-36 (Bankr. D. Conn. 2001). Indeed, §547 empowers the trustee to avoid certain prepetition transfers. But courts also recognize an exception where the debtor could have exempted the property had the trustee avoided it. *In re Smoot*, 237 B.R. 875, 878-80 (Bankr. D. Md. 1999). At least one court has held that, under Illinois law, a debtor could not prosecute a preference action to recover garnished wages because he could not exempt garnished wages from property of the estate. *In re Cervantes*, 503 B.R. 689, 693 (Bankr. N.D. Ill. 2013). Other courts have concluded otherwise, citing the language of Bankruptcy Rule 6009, which provides that the trustee or debtor in possession may prosecute an action on behalf of the estate. *See In re Pantazelos*, 543 B.R. 864, 875 (Bankr. N.D. Ill. 2016).

[10] Ms. Manuel's motion referred to Federal Rule of Civil Procedure 11. In issuing its ruling from the bench, the Court referred to Bankruptcy Rule 9011, which incorporates Rule 11 in bankruptcy and provides that a "motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected[.]" Fed. R. Bankr. P. 9011(c)(1)(A).

Rule 9011.[11]

In closing, the Court, acknowledging that its advice was gratuitous, impressed upon Mr. Sides and Ms. Manuel that they, as do other attorneys, have a duty not to impact their clients' cases based on their own personal disputes, stating that "you can't just say I'm going down in flames and I'll burn the other person on the way down" because if "you burn up your law license, you burn up your professional reputation, you are going to be struggling." The Court then stated that the case would move forward toward the previously-set pretrial conference where the Court would only hear matters related to the Debtor's underlying claim against FFB. Specifically, the Court said, "In any event, you need to get on with Mr. Hills and not the rest of this . . . . We are going to deny these motions, and just, just end it here."

On May 8, 2019, FFB filed its own pretrial statement, explaining that its attorney, Mr. Richardson, reached out to Mr. Sides about putting together a joint filing for submission to the Court to which Mr. Sides responded "with an e-mail which defense counsel believes is inappropriate to attach [to FFB's pretrial statement] but by which the Plaintiff declined to participate in preparing a joint pretrial statement." FFB's pretrial statement set forth its legal position that it had received only $504.87 during the preference period—an amount below the statutory threshold of $600 for preferences—and questioned whether the Debtor had standing to bring the action in the first place given that he was not entitled

---

[11] The Court also made a comment that it "hates these small preference cases." The Courts's concern about small preference cases has been well-documented over the years. *See, e.g., In re Minich*, 386 B.R. 723, 729 (Bankr. C.D. Ill. 2008) (small preferences should not be pursued where amount in controversy does not justify the costs).

to an exemption in the garnished wages under Illinois law. FFB's pretrial statement incorporated by reference the Debtor's previously-filed pretrial statement.

The following day, Mr. Sides filed a Response to Defendant's Pre-Trial Memorandum, stating that he "learned just this morning that he failed in his efforts to comply with the Court's March 1, 2019, pre-trial Order requiring a joint document." In response to Mr. Richardson's assertion that it would not be appropriate to file the email exchange between he and Mr. Sides, Mr. Sides accused Mr. Richardson of trying to bring extraneous matters into the case and provided his own transcription of what he told Mr. Richardson, arguing that there was clearly no malicious intent.[12] In his response, Mr. Sides conveyed to the Court that he had, in fact, spoken with his client and that his client still wished to pursue his requested relief. Mr. Sides also took the opportunity to point out that "[w]e all make errors, including the Court in a (sic) earlier mis-docketing of a hearing in this case."

The pretrial conference was held as scheduled on May 9, 2019. The Court noted that there were issues with the Debtor's failure to file the pretrial statement in accordance with its pretrial order. Other than to say it was problematic that there was not a joint pretrial statement, the Court did not dwell on the matter and asked Mr. Sides whether he had started his discovery. Mr. Sides responded that he did not think he needed to conduct any discovery. The Court then asked generally whether either party had obtained the records from the Debtor's

---

[12] Mr. Sides did not attach copies of the actual email exchange. He merely provided his own transcription of his email to Mr. Richardson.

employer that would be pertinent, explaining that if FFB's records showed that it did not receive payments of $600 or more then the burden would be on the Debtor to prove otherwise.[13] Mr. Sides then responded that he would, in fact, have to do some discovery. He also noted that he mailed the Debtor's responses to FFB's discovery requests the day prior. The Court reiterated that it did not know the facts and that the Debtor was entitled to disagree with FFB's assertions but that the Debtor ultimately had the burden of proof; the Court could not assume that, because money was withheld from the Debtor's paycheck, it had necessarily been received by FFB.

The Court also asked Mr. Sides whether he had complied with making initial disclosures to FFB. Mr. Sides responded that he had, then wavered and said that he did not think the disclosure requirement applied. Mr. Richardson interjected, expressing concern about where the case was going. He said that he originally asked for additional time to answer the complaint so that he could talk with Mr. Sides about FFB's defense. He said he had not contacted the Debtor's employer because he did not think it would be appropriate to do so. And he questioned whether Mr. Sides had conveyed to the Debtor the consequences of pursuing allegations without merit. The Court acknowledged that Mr. Richardson's concerns were valid and explained to Mr. Sides that he had some work to do. Mr. Sides thanked the Court and said, "You've done a lot to educate me." The matter was set for another pretrial conference on June 27, 2019, by which time Mr. Sides

---

[13] One element required to be established to recover a preference is that the creditor received more than it would have received if the Debtor's estate was liquidated and the payment had not been made. 11 U.S.C. §547(b)(5). And after a transfer is avoided as preferential, it may be recovered only from either an initial or immediate transferee. 11 U.S.C. §550(a). Thus, actual receipt by the creditor of the alleged transferred funds must be proven by a preponderance of the evidence.

was to have obtained all relevant information from the Debtor's employer. The Court stated that, if Mr. Sides were not ready to go to trial at that point, he likely would be facing a motion for summary judgment and possibly sanctions.

On June 26, 2019, Mr. Sides filed a Motion to Withdraw Complaint, stating that the Debtor "lacks the necessary resources from which to successfully proceed in this case and thus requests the Complaint be dismissed."[14] Later that day, Mr. Sides filed a Motion for File-Stamped Copies, claiming that the email notification of his filing of the Motion to Withdraw Complaint containing a link to "one free look" at the filing did not include the Court's file-stamp. He stated that he had contacted the Clerk's Office about the problem and that staff merely offered him an opportunity to pay for printed copies of the document. He also noted that his colleagues were not experiencing the same problem. Mr. Sides requested that the Court provide to him, at no charge, file-stamped copies of at least the first page of all documents filed in the case and to "direct its staff to fix the problem[.]"

On June 27, 2019, the Court entered its Order Dismissing Adversary and Denying Motion for File-Stamped Copies. Construing the Debtor's Motion to Withdraw Complaint as a motion to dismiss, the Court granted the motion and dismissed the complaint with prejudice. As for the Motion for File-Stamped Copies, the Court explained that it had investigated the problem internally and concluded that there was likely a technical problem on Mr. Sides' end. The Court invited Mr. Sides to contact the Court's IT Department to the extent it might be helpful. This adversary proceeding was closed on July 12, 2019.

---

[14] Mr. Sides never filed a statement disclosing his fee arrangement with the Debtor per Federal Rule of Bankruptcy Procedure 2016(b). The Court took his representation of the Debtor's situation at face value but had no way of knowing exactly what resources were needed to proceed with the adversary case.

More than a month later, on August 16, 2019, Mr. Sides filed his omnibus
Motion for Disqualification Such That Further Proceedings are Treated Impartially
by Successor Judge, Motion to Reopen for Relief from Erroneous Orders Entered,
in Part, From Reckless Assumptions, and From Judge's Reliance on False
Statements Intentionally Made by the Court's Own Officers, and Motion for Leave
to File the Attached Notice of Appeal Under Extended Time ("Omnibus Motion").
In it, Mr. Sides accuses the Court of "multiple attempts to drown the Plaintiff's
voice with threats and intimidation[,]" demands that the Court recuse itself "as
Plaintiff reasonably questions her impartiality from evidence included within the
associated motions[,]" and states that he "believes it is his professional duty, and
not a choice, to report the Judge's conduct to Illinois' constitutionally-created
Judicial Inquiry Board, the Illinois Supreme Court's Attorney Registration and
Disciplinary Committee . . . , and the United States Committee on Codes of
Conduct for the Judge's violations of ethical cannons (sic) applying to Federal
Judges."

Mr. Sides complains that the Court restricted electronic access to his
original Motion to Supplement without explanation, that the Court deprived him
of any ability to provide a meaningful response to Ms. Manuel's Motion to Strike
and Motion for Sanctions by disposing of the motions at the hearing on the Motion
to Supplement, and accuses the Court of ruling on false allegations contained in
the Motion to Strike and Motion for Sanctions that he describes as procedurally
deficient and thus should not have even been read by the Court. He says that the
Court "seized upon information within the illegally presented motion for sanctions"
and that "it is a problem of partiality, bias, and prejudice where the Judge

-20-

announced that no argument would be allowed and ruled from a motion as if it contained cross-examined and admitted evidence, when indeed the motion contains numerous intentionally submitted false statements and that those false statements were made by Officers of the Court."

Mr. Sides claims that the Court is "notorious for her attacking of Court Officers" and accuses the Court of coming to the hearing on the Motion to Supplement "loaded . . . with ammunition." Acknowledging that the Court denied all of the motions before it, he says that, at the hearing, the Court called the parties to the podium and announced that the sealing of the motion was due to significant inclusion of identifying information of minor children. He decries the Court telling him not to make faces and telling him to just stand and listen and says that "the Judge went on to identify *her* perceived weaknesses in the Plaintiff's case, challenged even the Plaintiff's filing of a preference type of case, referred to the Plaintiff's position as a 'leap,' and . . . acknowledged her ignorance of whether a Debtor can even file a preference." In a footnote, Mr. Sides criticizes the Court's "ignorance" as "reckless" given that it intimidated and warned the Debtor he "must not proceed to seek relief" and makes a remark about how embarrassed he is to have to explain the law to the Court.[15]

In bold, underlined, and italicized small-cap font, Mr. Sides says "the Judge's characterization of Plaintiff's filings and motives are patently false and misleading," and he accuses the Court of characterizing the filings "to suit her

---

[15] Mr. Sides comments are presumably in response to the Court's statement at the April 23 hearing on the Motion to Supplement that it was embarrassed to have to tell Mr. Sides that seeking to add his former partner to the Debtor's adversary proceeding against FFB was not an appropriate way of obtaining discoverable information.

self-interests of abusing Plaintiff and his Counsel." He argues that the Court "had no grounds to warrant the sealing of the documents . . . in their entirety, and/or further sealing of the document's exhibits[,]" claiming that "[i]ssues regarding minors did not saturate the Plaintiff's filing, as implied and directly stated by" the Court. In essence, he says that Ms. Manuel had already publicly disclosed the children's birth dates, and that the disclosure of their birth dates in itself is not harmful or identifying, speculating that the Court "sealed the document from public view because of another, biased/prejudicial/self-interest (sic) motive[.]"[16] In doing so, Mr. Sides says the Court "not only denied relief to Plaintiff, but also obliterated his hope to have a voice in the proceeding and even additionally told Plaintiff his opportunity for relief and a voice were ended."

Mr. Sides construes the Court's denial of his attempt to add Ms. Manuel to this adversary by "supplementing" the complaint under Federal Rule of Civil Procedure 15(d) as a refusal to apply a rule with which the Court has no experience and does not understand.[17] He says that "a full argument on the Rule's applicability may or may not be included on appeal[.]" Mr. Sides also argues that the Court's characterization of his pleading as an attempt to obtain relief over his personal business and family disputes when the Court does not have subject

---

[16] It is worth noting that Ms. Manuel did not disclose personally identifying information of her and Mr. Sides' minor children in her filings with this Court. Bankruptcy Rule 9037 applies to documents filed in this proceeding. Naturally, the Court has no knowledge of what she has disclosed in other tribunals. And, ultimately, what has been filed in other courts or cases is not this Court's concern.

[17] Actually, at the hearing, the Court attempted to explain that filing an amended complaint to add a new cause of action and a new party would be governed by Federal Rule of Civil Procedure 15(a). Rule 15(d) is limited in scope and does not permit the filing of new causes of action against new parties as Mr. Sides requested to do in his Motion to Supplement. Mr. Sides has never provided any authority to support his contention that Rule 15(d) provided a basis for his requested relief.

matter jurisdiction over such disputes "could not be more wrong."[18] He claims that the Court "has a bias and likely self-interested motive for her attempt at sweeping this all under a giant rug."

Mr. Sides further claims that his being admonished at the April 23 hearing for making "dirty looks" can only be construed one of two ways; the comment was intended "either to provoke  Plaintiff's respectful Counsel into an outburst or some other confrontational behavior . . . (assumedly attempting to gain a bases for finding contemning behavior from Plaintiff's Counsel), or the remark was designed to create a record of false hostility from Plaintiff's Counsel when such was simply not present."[19] Going a step further, Mr. Sides says that, when he refused to "feed into" the Court's strategy, the Court attempted to disguise its intent by framing its "attacks" as "intended advice" while "attempting to push him toward prohibited behavior."[20]

Mr. Sides also accuses the Court of bias in "twice noting the non-presence of the Plaintiff personally for the procedural and non-substantive (except when the

---

[18] Mr. Sides has never presented any statutory or case law authority in support of his apparent contention that this Court has subject matter jurisdiction over his personal business and family disputes with Ms. Manuel.

[19] According to Mr. Sides, his mother was in attendance at the hearing, and he believes this is somehow dispositive because he would never behave in a disrespectful manner in the presence of such company.

[20] Here, Mr. Sides is presumably referring to the Court's suggestion that the Debtor contact his bankruptcy attorney, Ms. Manuel, for his bankruptcy case file rather than Mr. Sides seeking to add her as a party to the adversary proceeding. Mr. Sides wholly misconstrues the Court's comments as instructing him to personally contact Ms. Manuel. At the hearing, the Court suggested only that the Debtor could contact Ms. Manuel, who was still also his attorney in the main case, and work with her to get what he needed from his file. The Court never said that Mr. Sides should contact Ms. Manuel and never ordered him to do so.

Judge left the topic of the setting to criticize Plaintiff's case while ignorant of the law) April 23 event." He says that the Court "seized upon the Interested Party's assertion in her combined motion and expressed 'doubt' that Plaintiff's Counsel filed the motion on behalf of the Plaintiff when it was 'all about you.'" As evidence that he was merely following the direction of his client, Mr. Sides says that the Debtor "willingly signed a sworn affidavit stating his desire to continue to seek relief in this cause." He claims that the Court accused him of a host of unprofessional and unethical behaviors, showing there is "seemingly no end to the Judge's reckless accusations and abuse."

Mr. Sides describes the Court's comments and unsolicited advice as "superficial ruses" that are "contradicted by her illegal orders intended to limit Plaintiff's rights and . . . other behavior that vastly outweigh (sic) the intended appearance of evenhandedness." He claims that "the Judge abused Plaintiff's Counsel with threats of discipline from both herself and third parties, intimidation designed to prevent Plaintiff from seeking further relief, and issued incorrect statements to the parties for the purpose of obtaining results that suited her personal interests."

According to Mr. Sides, the Court's partiality is apparent because it "spent much effort insulting and threatening (including with the ending of his career)" while engaging in "flattery and endearing comments (as if to say, 'no worries, you're my buddy') to both" FFB's and Ms. Manuel's attorneys. He says the Court took Ms. Manuel's false statements "hook, line, and sinker" and sought to establish a closeness with FFB's counsel by noting that Mr. Richardson, a Chapter 7 trustee, knows that it hates this type of small preference case "for the purposed

effect of calming any personal stress felt by the Defendant's Counsel as the Judge removed any perceived threat . . . to that attorney, and showing that the Judge's wrath was attacking someone else."[21] He also accuses the Court of giving Ms. Manuel's attorney legal advice to Mr. Sides' disadvantage by stating that it was "sure that he is aware of" the safe harbor provision in Rule 9011 and that he did not comply with the provision. He says "the Judge further affirmed her bias with her apologetic rhetoric and posture to Interested Party and lamented her lack of punishment levied upon Plaintiff and/or his Counsel when she discussed the denial of the Interested Party's motion for sanctions as she stated, 'that's all I [the Judge] can do.'"

Mr. Sides further urges that "it is not 'alright' for the Judge to bring up the emotion-laden subject of sanctions merely for intimidation purposes." He argues that his filing could not have been sanctionable or else the Court would have imposed sanctions. According to Mr. Sides, while the Court's "abuse and intimidation pervade unrestrained throughout the case[,]" the "Judge is no Diety and only the delusional would worship her as such." He claims that "[i]n no less than a dozen attempts does the Judge argue for the end of the case, manipulate the case to complete the termination of the case, or directly order that the case be ended."

Mr. Sides also accuses the Court of "refus[ing] to educate herself regarding the law authorizing the Complaint and simply attack[ing] its existence because

---

[21] The Court did say that Mr. Richardson was aware of the Court's position on small preference cases. Mr. Richardson is a Chapter 7 panel trustee in the Central District of Illinois and, in that capacity, is aware of the *Minich* case wherein the Court articulated its concerns about trustees pursuing small assets without benefit to the estates they are administering. *Minich*, 386 B.R. at 728-29.

she was unlawfully biased against either the cause[,]" the Debtor, or Mr. Sides. He says "the criticism and the outright order to end the case with threats of eliminating Plaintiff's Counsel's license to practice law in the State of Illinois was indeed partially successful in the sense that it caused Plaintiff's Counsel not only further research but also caused Plaintiff's Counsel to be personally anxious about a potential career-ending improper influence the Judge may have over his law licensor, the Supreme Court of the State of Illinois." According to Mr. Sides, "[n]early every utterance from the Judge at the April 23 event was designed to harm the Plaintiff and/or his Counsel."

While maintaining that he is the utmost professional, Mr. Sides takes the opportunity to inform the Court that other practitioners describe the Court as "bullying," and even goes as far, in a footnote, as stating that "the Judge truly makes a mockery of her office and, as such acts are a scourge upon the Profession, she embarrasses the larger Judiciary." Claiming that there is no end to the Court's abuse, Mr. Sides states that he filed a "straight-forward" Motion for File-Stamped Copies several weeks after the April 23 hearing—"when it was assumed that any anger, or other emotion held by the Judge that influenced the April 23 event should have long, long since healed or even simply calmed"—only to have it denied by the Court in an order that "unnecessarily challenged Plaintiff's Counsel's credibility by framing the no-file-stamp concern as, 'According to Mr. Sides . . . .'"[22] He says the Court "challenges Plaintiff's Counsel's I.T. competence

---

[22] Mr. Sides also appears to insinuate that the Court intentionally prevented the fixing of the national Court Management/Electronic Case Filing system ("CM/ECF") generated file-stamp to the documents he filed in the case by noting that the issue conspicuously began to occur after the Court restricted electronic access to some of his filings. Elsewhere, Mr. Sides states that "it would serve the purpose of a judge who desires to limit the voice of a party (as the Judge clearly demonstrates her desire

and speculates that user error was a result of outdated software." He seems to claim that the Court's denial of his Motion for File-Stamped Copies specifically harmed the Debtor or himself because it forced Mr. Sides to withdraw the Debtor's complaint for lack of resources. He claims that the denial of the Debtor's Motion for File-Stamped Copies offended the "Equal Protection promise of the 14th Amendment" and that the "United States government with the second-highest gross domestic product on the planet is clearly in the better position to absorb a loss over a Debtor who just recently completed the Chapter 7 Bankruptcy process." As evidence of the Court's alleged misconduct, Mr. Sides attached screen-shots purporting to show his "one free look" in CM/ECF without any file-stamps.

Included in the filing was a Motion for Leave to File the Attached Notice of Appeal Under Extended Time, apparently seeking to appeal any and all rulings adverse to the Debtor in this adversary proceeding. Without specifying which rulings he intended to appeal, Mr. Sides argues that any untimeliness was attributable to excusable neglect stemming from, among other things, "the resting and healing of a knee injury that occurred during June 2019 while on a trip to Walt Disney World" with his children, his "affording nearly all conscious moments attempting to mend damaged relations with his children after Interested Party

---

to do so, even stating as such) if the party only obtained file-stamps on pleadings that pleased the Judge, a decision made after the Judge had the opportunity to electronically review the document . . . and if not pleasing to the Judge, it could be sealed away from the public's view or any third party, or indeed to the parties of the action themselves, and even as to the filer, as was the instance in this cause when the Judge sealed the Plaintiff's filings." Mr. Sides does not identify any documents that he believes were actually removed from the docket and seems to misunderstand the concept of restricting access to certain documents. Those documents remain part of the record and can be viewed only under limited circumstances by a limited audience. The purpose of restricting access is to protect confidential information.

uttered false statements to them" about him, "and dealing with the aftermath of crimes committed by Interested Party against Plaintiff's Counsel, only some of which are mentioned in the filings sealed" by the Court. Mr. Sides also attributes any untimeliness to the "resulting altered-consciousness from the lawful, physician-prescribed pain medications" associated with his knee pain. He says that "a physician-prescribed 'keto' style of diet has reduced the level of sugars to Plaintiff's Counsel's brain such that when returning to mundane tasks began (sic) the prior day Plaintiff's Counsel finds himself frequently attempting to even recognize his previous efforts." Mr. Sides further asserts that he also underwent oral surgery in May 2019 that resulted in the prescribing of "more pain killers that affected his ability to be productive regarding legal work." All that notwithstanding, Mr. Sides argues that any deadlines should be ignored because "the population of Illinois is 12.74 million residents[,]" and "allowing just 1 second for each of Illinois' residents would create a limitation period of nearly 5 months, 147.45 days."

Attached to the filing are several documents labeled as Exhibits A, B, and C. Exhibit A consists of the original Motion to Supplement and the Second Motion to Supplement and attachments to which electronic access had been previously restricted, but with the children's birth dates redacted. The client names and financial information and the account and routing numbers on the bank check had not been redacted. Additionally, the emails originally attached to the Second Motion to Supplement still included unredacted references to the children's names. Exhibit B consists of screen-shots from CM/ECF purportedly showing Mr. Sides' "one free look" at certain filings that did not contain a file-stamp, as well as

an Affidavit in Support of Motion to Alter Judgment, signed by the Debtor, stating that Mr. Sides had informed the Debtor that his "prior attorney, Cristina Manuel, has removed files from [Mr. Sides'] computer and that the Court has denied a request to have the files returned[,]" that the Debtor is "employed during the day hours, during the week . . . making it difficult for [him] to come to Court either on short notice or for mere procedural hearings[,]" and that he "desire[s] to move forward with asking Cristina Manuel to return the files so that [his] case can proceed." The Debtor does not explain why he did not directly ask Ms. Manuel for his files. Exhibit C consists of the Debtor's Notice of Appeal to the District Court, appealing "all Orders/Rulings entered against Plaintiff in this action, the last of which being on June 29, 2019."

On August 20, 2019, the Court entered its order giving FFB and Ms. Manuel "until September 17, 2019, to respond, in whole or in part as they may deem appropriate, to the Omnibus Motion[,]" noting that, if no response was filed, the Court would take the matter under advisement thereafter. The order further stated that, if a response was filed by Ms. Manuel or FFB, then Mr. Sides would be given until October 15, 2019, to reply to such response and that the matter would be under advisement thereafter.

On August 22, 2019, Ms. Manuel, through counsel, filed her Motion to Seal Document, docketed as a motion to restrict electronic access, asking that the Court seal Exhibit A to Mr. Sides' Omnibus Motion because it contained various references to personally identifying information in violation of Federal Rule of Bankruptcy Procedure 9037. The Motion to Seal Document cited several examples of such information, including references to minor children by name on three

different pages, the bank check with account and routing numbers on two pages, and a "detailed list of clients and financial information regarding individual debtors in wholly unrelated cases[.]"[23]

The same day, the Court entered another text order restricting electronic access to Exhibit A of the Omnibus Motion so that it could only be viewed by court personnel. The docket text stated that it "contain[ed] certain personal data identifiers which must be omitted or partially redacted per the Privacy Policy of the United States Judicial Conference." The Court then issued an Order to Show Cause, inviting any party in interest to file a written response by September 5, 2019, explaining why the document should not be stricken from the record. The Order to Show Cause further stated that, in the absence of any response, the document would be stricken from the record without further notice or hearing.

On September 5, 2019, Mr. Sides filed his Second Motion to Disqualify and Motion to Extend Time by One Day ("Second Motion to Disqualify"), his Third Motion to Disqualify Adding #50 Recusal Refusal Errors ("Third Motion to Disqualify"), his Fourth Motion to Disqualify and Response to Motion to Seal Document ("Fourth Motion to Disqualify"), and his Fifth Motion to Disqualify and Showing of Good Cause ("Fifth Motion to Disqualify"), which he docketed as a response to the Order to Show Cause. The filings, including attachments, together totaled more than 400 pages in length. Each Motion to Disqualify contained the same exhibits, consisting of the Omnibus Motion filed August 16, 2019, the original Motion to Supplement, the Second Motion to Supplement, and all exhibits

---

[23] The Motion to Seal Document acknowledges that client information "may not technically violate Rule 9037, [but] it is needlessly included and only serves to potentially embarrass debtors totally unrelated to this case."

previously attached to those filings. The minor children's names and birth dates were redacted. Likewise, the account and routing numbers on the bank check were redacted, but the client information was not fully redacted.[24]

The Second Motion to Disqualify claims that "the Judge pre-adjudicated this case from her bias and/or prejudice in an attempt to harm Plaintiff, and/or benefit Interested Party or Defendant, and/or dissuade Plaintiff from further seeking his due relief," even though "this case has yet to reach any *lawful* consideration on the merits and remains yet within a pre-trial phase." Mr. Sides further alleges that "[t]he sadness deepens as the abusing Judge has engaged in a recusal refusal and has entered two orders two days apart from each other, both of which evidence her continued bias against" the Debtor, his case, "and/or" his attorney, Mr. Sides. According to Mr. Sides, by stating in its scheduling order on the Omnibus Motion that "the matter will be taken under advisement[,]" the Court was engaging in "recusal refusal." Apparently for the purpose of "[i]llustrating the seriousness and non-reasonable nature of the Judge's misconduct," Mr. Sides repeats numerous allegations made in his Omnibus Motion, mostly accusing the Court of entering "illegal" orders based on false representations made by Ms. Manuel, intentionally mischaracterizing Mr. Sides' filings and actions for the purpose of creating a false record and inflicting harm on him, sealing Mr. Sides' filings for the purpose of hiding the truth and sweeping it all under a giant rug, ordering Mr. Sides to do things that were either illegal or intended to trick him into committing illegal or sanctionable acts, and refusing to accept the law for its

---

[24] Mr. Sides attached two copies of the same Notice of Withdrawal from Partnership and Dissolution Settlement that included client names and financial information; one was redacted and the other was not.

own self-interested reasons.[25] Mr. Sides says there is no sign "as to when the Judge will cease embarrassing the Federal Judiciary or cease the abuse" against the Debtor "and/or" Mr. Sides.[26]

Mr. Sides' Third Motion to Disqualify repeats, almost verbatim, many of the

---

[25] Specifically, Mr. Sides says the Court: "a. improperly ruled from a motion that was also improperly submitted for the Judge to consider; b. recklessly accepted as fact many prejudicial, false statements from Interested Party and verbally attacked Plaintiff, Plaintiff's case, and/or Plaintiff's Counsel during a 22+ minute diatribe; c. mischaracterized Plaintiff's position, filings, and motives to deny positions that were never presented, specifically false characterizations that Plaintiff sought the Court to take jurisdiction over a business entity or family issues. (Interested Party performed acts that are of the same legal consequence as walking into Court and purposely stealing another counsel's files from a brief case for the primary purpose of depriving second counselor access to his/her work product. Plaintiff made the Judge entirely aware of the Interested Party's illicit acts, but the Judge ignored and sealed the filings before her; d. improperly sealed Plaintiff's filings which document felonious crimes by the Interested Party, crimes directly affecting this adversary cause; e. attempted to make a record of disrespect and/or hostile behavior from Plaintiff's Counsel's respectful behavior; f. ordered the Plaintiff's Counsel to perform an illegal act of contacting a represented party, an order resulting from either the ignorance of the illegality of the act, or an attempt to trap Plaintiff's Counsel into sanctionable behavior. (This is yet another reason for disqualification: a judge who relies on threats and intimidation or refuses to consider the law or facts of a case simply cannot be trusted to have a good-faith purpose in her rulings); g. twice ordered Plaintiff's Counsel to stand before the Bench for the 22+ minute event when Plaintiff's Counsel was, and is, enduring knee pain; h. knowingly mischaracterized a filing solely related to Plaintiff's relief as 'all about [Plaintiff's Counsel]'; i. executed intimidation designed to limit Plaintiff's further pursuance of relief; j. threatened to limit or have taken away Plaintiff's Counsel's Illinois Supreme Court issued license to practice law; k. without proof, incorrectly, and repeatedly accused Plaintiff and/or his Counsel of attempting to relitigate and/or 'circle-back' in Federal Court on issues that belong in State Court; l. announced her ignorance of a §547 action but more importantly indicated her unwillingness to educate herself when such an action was filed before the Court over which she presided because of her feeling of 'hate' [quoted from Document #30]; m. showed her lack of respect for due process and penchant for abuse when telling Plaintiff's Counsel she could sanction him without notice under FRBP 9011, and without allowing him an opportunity to first be heard. Not that the Judge's lack of professional self-control was enough as she issued her threat, she showed a willingness to remain ignorant of the law as that Rule was already in play at the event, from Interested Party's motion for sanctions; and n. announced her regret that certain procedure limited the harm she could perform upon Plaintiff, Plaintiff's case, and/or Plaintiff's Counsel."

[26] Over the course of several paragraphs Mr. Sides also goes into detail explaining why he was unable to meet the September 5 deadline to respond to the Order to Show Cause. The Fifth Motion to Disqualify and Showing of Good Cause was filed the same day as the Second Motion to Disqualify—September 5, 2019—and, to the extent it was responsive to the Order to Show Cause, was therefore timely.

same allegations set forth in the Second Motion to Disqualify.[27] But, in addition, Mr. Sides takes issue with the Court's use of the term "omnibus" to describe his August 16, 2019, filing that included three distinct motions to disqualify, reopen, and for leave to file notice of appeal. According to Mr. Sides, "the Judge's use of the adjective during the pendency of a motion to disqualify her for her misconduct reflects both her inability to maintain even an appearance of neutrality and her lack of desire to cease embarrassing the System."

The Fourth Motion to Disqualify acknowledges the filing of Ms. Manuel's Motion to Seal Document for violations of Federal Rule of Bankruptcy Procedure 9037 and states that "[n]one of this information was disclosed for a purpose other than to advance Plaintiff's case, Interested Party points to no specific harm, and any violation of FRBP resulted from mere inadvertence." Mr. Sides argues that the "bank check information . . . itself does not seem to violate FRBP 9037 as it is drawn not from a personal account, and is thus not personally identifiable information." He also asserts that he "is the legal and biological father of the minor children referred to in . . . the motion to seal[,]" which he seems to believe excuses the violation of the Rule. Finally, in noting Ms. Manuel's acknowledgment that the public disclosure of bankruptcy client names does not violate Rule 9037, Mr. Sides questions how such information could be construed as embarrassing while also taking the opportunity to offer that Ms. Manuel's attorney "may have some superior insight from his own personal filing for bankruptcy relief."

In his Fifth Motion to Disqualify, Mr. Sides argues that "[t]he causes why the

---

[27] Indeed each of Mr. Sides' Motions to Disqualify recite the same allegations made in prior motions. The Court finds it unnecessary to repeat the same allegations made throughout the numerous motions filed by Mr. Sides—often within minutes or hours of the previous filing.

document[28] should not be stricken are numerous—including all the documented instances of false statements by Interested Party to this Court and the ensuing instances of bias, prejudice, and abuse by the Judge—all documented by Plaintiff in all his filings since April 23[.]" In addition, Mr. Sides argues that "[s]triking the document is a disproportional (sic) punishment[,]" accusing the Court of having "an agenda to strike vast amounts of Plaintiff's argument from rationales that do not include the limiting of personal identifiers in the case file[.]" He again argues that "none of this information was disclosed for a purpose other than to advance Plaintiff's case," that Ms. Manuel "points to no specific harm," and that "any violation of FRBP resulted from Plaintiff's Counsel's mere inadvertence as he scrambled to get a document filed with the Court." He attempts to justify his inclusion of personal identifying information and claims that "[s]triking of the document is unnecessary because the Judge has already issued an Order limiting it to Court Personnel." Mr. Sides alleges that the Court has "a personal interest in striking the document because striking it from the record protects the Judge's interest of limiting the Plaintiff's success of appeal." He further "insists on the non-striking of the document via his protections from the Fourteenth Amendment's Equal Protection Clause[,]" arguing that any violation "pales in comparison to the Judge's misconduct that included many calculated acts which were read from her notes from the Bench during her 22+ minute diatribe."

On September 12, 2019, the Court entered its order dismissing the Order to Show Cause based on a redacted copy of the document containing personal data identifiers having since been filed. The order further stated that the order

---

[28] The Order to Show Cause related only to Exhibit A to the Omnibus Motion.

restricting access to Exhibit A of the Omnibus Motion remained in full force and effect and that electronic access to that document would remain restricted. The order also noted Mr. Sides' discontent with the Court describing his filing as an "omnibus" motion and explained that the sealing of Exhibit A was done in accordance with the Court's standard procedure. The order acknowledged Mr. Sides' filing of four additional Motions to Disqualify and his justification for including personal identifying information in violation of Rule 9037, finding his justification to be without merit. The Court reiterated that it did not have subject matter jurisdiction over the family and custodial issues and stated that it had previously "admonished Mr. Sides that the inclusion of personally identifying information of his minor children, a copy of a bank check including the full account and routing numbers, as well as the identity and financial information of clients unrelated to the adversary proceeding was wholly inappropriate and that access was restricted for that reason."[29] The Court found that "the order restricting access to Mr. Sides' filings [was] a direct result of his intentional violation of" Federal Rule of Bankruptcy Procedure 9037.

The order also explained that, under the recusal statute cited by Mr. Sides, the Court had an obligation to decide the disqualification issue itself and to only recuse itself where appropriate. The Court explained that to immediately recuse itself upon the filing of Mr. Sides' motion "without due consideration would be to abdicate the Court's corresponding duty to ensure that disqualification is actually

---

[29] In fact, the Court's admonishment at the April 23 hearing was focused solely on the inclusion of identifying information of minor children. Concerns about the inclusion of financial account and client information were raised in Ms. Manuel's Motion to Seal Document, but they were not specifically addressed by the Court at the hearing. Nevertheless, Mr. Sides was clearly put on notice that a review of Rule 9037 was required before the filing of any more documents.

warranted." The order stated that, "[c]onsistent with that duty, the Court set a briefing schedule for interested parties to respond" and that the matter would be taken under advisement thereafter.

On September 16, 2019, Ms. Manuel filed a Motion for Sanctions Under F.R.B.P. 9011 ("Second Motion for Sanctions"). The Second Motion for Sanctions notes that Ms. Manuel's previous Motion to Strike and Motion for Sanctions was denied as procedurally improper and argues several bases for imposing sanctions against Mr. Sides. Ms. Manuel points to Mr. Sides' continued failure to comply with Bankruptcy Rule 9037, despite being admonished by the Court and having electronic access to the offending documents restricted. She also notes that, in order to electronically file documents through CM/ECF, Mr. Sides was required to check a box indicating that he was aware of and understood his obligation to redact personally identifying information as defined by Bankruptcy Rule 9037. The Second Motion for Sanctions argues that Mr. Sides' repeated conduct in filing documents in violation of the Rule could only be construed as intended to harass Ms. Manuel and the Court in violation of Federal Rule of Bankruptcy Rule 9011.

Ms. Manuel's Second Motion for Sanctions also argues that, because the case was voluntarily dismissed and Mr. Sides did not timely seek relief from that dismissal, there is no legal or factual basis for his various motions filed since the dismissal. According to Ms. Manuel, she and her attorney have expended much time and energy defending against Mr. Sides' baseless allegations and harassment. She asks that Mr. Sides be required to pay her legal expenses and to pay a penalty to the Court to deter him from repeating the same or similar conduct. Attached to the Second Motion for Sanctions is a copy of a certified

envelope showing mailing of the motion to Mr. Sides on August 23, 2019, in an apparent attempt to show that Mr. Sides had received notice of the intent to seek sanctions before the sanctions request was filed.

On September 17, 2019, FFB filed its Combined Motion to Strike and Response to Plaintiff's Motion for Disqualification. In it, FFB describes the case before the Court as "a divorce masquerading as a bankruptcy." FFB argues that Mr. Sides' submissions to the Court amount to a request to alter or amend a judgment under Bankruptcy Rule 9023, incorporating Federal Rule of Civil Procedure 59, which are not supported by affidavits and therefore should be stricken. As to the substance of Mr. Sides' filings, FFB notes that Mr. Sides "does not appear to take issue with the Court's dismissal of the case which was on the Plaintiff's own Motion" but "does repeatedly take issue with the Court's denial in April of relief" while "fail[ing] to take into consideration that he is arguing about claimed errors and prejudice at a motion hearing on a case which he has since dismissed on his own motion."

FFB also points out that, while "the Motion takes issue with the claimed bias of this Court and does ask that the case be reopened, [it] does not seek to vacate the order of this Court granting the Plaintiff's Motion to Dismiss his own case." And, to the extent that the request to reopen the adversary case is considered a motion to vacate the order of dismissal, FFB contends that "it is untimely under Bankruptcy Rule 9023, which requires a motion for a new trial or altering or amending the judgment to be filed within 14 days after entry of the judgment." Likewise, FFB argues that the request to extend the deadline for filing notice of appeal is also untimely.

On September 17, 2019, Ms. Manuel filed her Omnibus Response to Various Motions to Substitute and Reply to Plaintiff's Response to Order to Show Cause. The response contends that the Court has been impartial and fair throughout the proceeding and argues that there is no basis for granting any of the relief sought in the Omnibus Motion or any of the subsequent Motions to Disqualify.

On September 26, 2019, Mr. Sides filed his Sixth Motion to Disqualify (This Time for Criminal, False, and Retaliatory Statements to this Court) and Motion to Set Aside Offending Order ("Sixth Motion to Disqualify"). Maintaining that the Court has refused to step aside, Mr. Sides alleges that "[i]n her last order, the Judge goes to great lengths to manufacture a story from false statements she created." He says that the Judge knew the statements were false when she published them but concocted the story in retaliation to Plaintiff's Counsel's reporting of the Judges (sic) *prior* misconduct in this case to both Illinois and Federal authorities." He further claims that "[t]here is no limit to the Judge's willingness to misuse the powers of her office including the criminal use of false statements as she continues to threaten" the Debtor, the Debtor's case, and himself.

Mr. Sides alleges that "[t]he false story that the Judge tries to sell is that Plaintiff offended a procedural rule, that the Judge admonished Plaintiff not to violate that rule[,] and that Plaintiff continued to intentionally violate the rule." He accuses the Court of using its "finding" of a violation "to promise she will harm Plaintiff's counsel." Mr. Sides further states that the "unhinged, and thus dangerous, Judge recklessly brings infamy to her office and becomes a scourge to

her profession with her false story, and she will likely find herself civilly and/or criminally liable." As proof of the Court's allegedly criminally false statements, Mr. Sides points to its statement in the order dismissing the Order to Show Cause that Mr. Sides had previously been admonished about not redacting personally identifying information about minor children, financial accounts, and former clients, when, in fact, the Court "made no such comment regarding a bank check or financial information."[30]

Mr. Sides also takes issue with the Court finding that his violations of Bankruptcy Rule 9037 were intentional, calling the finding a "mere fantasy by a Judge with the obvious agenda of harming Plaintiff's Counsel with a technical violation of a rule after Plaintiff's counsel has called her out for her repeated misconduct." He goes even further, accusing the Court of "sitting on evidence that Plaintiff's Counsel has made effort (sic) to comply with 9037[.]" He claims that the "motion was sealed without explanation" despite his "repeated attempts to comply with 9037 by redacting material beyond what Interested Party found objectionable." In his prayer for relief, Mr. Sides asks the Court to set aside the order dismissing the Order to Show Cause.

On September 27, 2019, Ms. Manuel, through counsel, filed her Objection to Sixth Motion and Motion for Sanctions Under 28 U.S.C. §1927 ("Third Motion

---

[30] Mr. Sides makes much of the fact that, in its order dismissing the Order to Show Cause, the Court suggested that Mr. Sides was admonished about all of his violations of Rule 9037 at the April 23 hearing, when, in fact, at the hearing, the Court focused solely on his violation of Rule 9037 by including the personal information of his minor children in his Motions to Supplement. But the admonishments made to Mr. Sides at the hearing clearly put him on notice that he needed to review Rule 9037 before filing any more documents, and his inclusion of the children's information in his Omnibus Motion shows that he failed to heed that admonishment. It was not the Court's duty to point out to Mr. Sides every detail of Rule 9037; he had a duty to inform himself of the obligations associated with practice before this Court.

for Sanctions"). In it, Ms. Manuel questions the utility of setting aside the order that dismissed the Order to Show Cause, as well as whether the Debtor has been personally involved in the handling of his case. Ms. Manuel argues that Mr. Sides continues to file motions that assert "no meritorious claims, and certainly no claims that have any possible benefit to the actual Plaintiff." Citing 28 U.S.C. §1927, Ms. Manuel contends that Mr. Sides has "unreasonably and vexatiously" multiplied the proceedings in this case and should therefore be required to pay the opposing parties' attorneys' fees and expenses.

On October 15, 2019, Mr. Sides filed his Seventh Motion to Disqualify and Reply to Interested Party's #64 Response ("Seventh Motion to Disqualify") and Eighth Motion to Disqualify and Reply to Defendant's #63 Response ("Eighth Motion to Disqualify"). In large part, both motions seek to downplay what Mr. Sides sees as "technical" complaints regarding his own handling of the case while emphasizing perceived transgressions against himself. He accuses Ms. Manuel of trying to profit financially from what he says are abuses, crimes, and general misconduct on the part of herself and the Court. He characterizes FFB's response to the Motion to Disqualify as "stroking the Judge's ego with the submission that this case is really a divorce case" and attacks FFB's counsel for asking the Court to strike Mr. Sides' filings. Mr. Sides, again, accuses the Court of "retaliat[ing] against Plaintiff and his counsel with false statements and threats to damage a career." Mr. Sides further contends that "the Rules" no longer apply to this proceeding as the Court has "made a mockery out of the case" and that the dismissal of the Debtor's case was forced by an abusing Judge.

On October 22, 2019, Mr. Sides filed his Ninth Motion to Disqualify and

Response to Interested Party's (#62) Second Motion for 9011 Sanctions ("Ninth Motion to Disqualify") and his Seventh[31] Motion to Disqualify and Reply to Responsive *Objection to Sixth Motion and Motion for Sanctions Under 28 U.S.C. § 1927* ("Tenth Motion to Disqualify").[32] In even harsher language than prior motions, Mr. Sides accuses the Court of an array of "abuses" for the purpose of satisfying "a personal vendetta" against the Debtor and Mr. Sides. He claims that the Court's continued refusal to recuse itself has limited his "ability to muster the respect that would normally be deserving of proper filings from non-perjurious Judges and parties in a normal case." Mr. Sides accuses the Court of making intentional false statements, or "lies," that are "designed to lay a foundation for future abuses" that, in turn, "are designed to intimidate Plaintiff's counsel from further seeking relief on behalf of Plaintiff." He claims that the Court's statements and actions are "likely criminal in nature[,]" and, "[w]hen faced with laws and facts that did not conform to her agenda, the Judge simply made up stories[.]" He describes the Court as "lawless" and says that "[t]he Judge's acts embarrass the legal community and are an insult to her peers[.]"

Mr. Sides claims that the "Judge's most recent Order[33] makes a conclusion that she should remain on this case, but neither the law to which the Judge cites, nor the language she quotes from the caselaw (sic) allows for her disappointingly

---

[31] It appears that Mr. Sides cut and pasted portions of his Seventh Motion to Disqualify and failed to modify the title of the filing. This is actually his tenth motion to disqualify.

[32] By the time the Ninth and Tenth Motions to Disqualify were filed, the Court had already taken the issue of disqualification under advisement but continued to add Mr. Sides' later filings to the matters under consideration.

[33] At the time the Ninth and Tenth Motions to Disqualify were filed, the Court's most recent order was the order dismissing the Order to Show Cause.

inane logic." He claims that "[i]t is clear that such poor logic is for the self-serving purpose to remain in control of a case to either continue harming Plaintiff or to avoid the embarrassment of having one of her peer (sic) clean up the Judge's mess[.]" According to Mr. Sides, the "law has been repeatedly briefed to the Judge by the Plaintiff, yet the Judge marches into infamy by desperately doing anything she can think of to intimidate/harm Plaintiff."

In the Ninth Motion to Disqualify, Mr. Sides takes issue with Ms. Manuel's "notion that she was forced to hire counsel[,]" noting that she is "represented by her long-time lunch pal" and concluding that "it is a false statement that she was forced." Apparently as a defense to Ms. Manuel's assertions that all of Mr. Sides' filings had no purpose other than to harass her and the Court, Mr. Sides signed an affidavit of his own swearing "that pursuant to every duty I owe my client, this Court, and Illinois that I believe the allegations set forth in every document I have caused to be filed with this Court are true and correct, and that no document has been filed for the sole purpose of causing delay or harassment." Mr. Sides also says that the dismissal of the case "with prejudice" is irrelevant and "should be assumed to be a function of [the Court's] continued abuse, bias, and prejudice."

In the Tenth Motion to Disqualify, Mr. Sides blames the Court, Ms. Manuel, and FFB for "this mess," calling the Court's actions "atrocious" and accusing it and Ms. Manuel of creating "noise . . . for the attempted purpose of drowning-out or fogging the evidence of their misconduct, much of which is criminal in nature[.]" He claims that Ms. Manuel "is eager to allow this litigation to become a more and more malignant cancer upon the Judiciary as the abusive Judge who apparently knows nothing but to double-down on her misconduct with continued,

increaseingly (sic) fierce abuse and false stories about Plaintiff's counsel and digs a deeper abyss of case corruption." Mr. Sides further accuses Ms. Manuel of wrongdoing in the form of not referring to the full title of his "Sixth Motion to Disqualify (This Time for Criminal, False, and Retaliatory Statements to This Court) And Motion to Set Aside Offending Order" in one of her responsive filings, instead calling it the "Sixth Motion to Disqualify and Set Aside Offending Order."

Mr. Sides also latches onto Ms. Manuel's reference, in her Third Motion for Sanctions, to the comments in Illinois Rule of Professional Conduct 8.2 regarding the defense of the judiciary when judges or courts are "unjustly criticized." First noting that he "*justly* criticizes" the Court, Mr. Sides goes on to allege that Ms. Manuel's defense of the Court is rooted in monetary profit that she stands to gain without going "out on a limb to support the Judge" because she wants her own misconduct "covered-up." In response to Ms. Manuel's allegations that he is "attacking" the Court and others, Mr. Sides says that, "after a reread, Plaintiff's counsel cannot find anything that can reasonably be deemed as an attack on the Court." He claims that "[t]he same, of course, cannot be said about the Judge who has subjected Plaintiff to her relentless predation since April." Mr. Sides defends his actions, stating that "[m]ultiple filings have been required to protect Plaintiff's interests in the reviewing courts, because the Judge has struck documents without explanation, leaving the Plaintiff to speculate as to the cause and Plaintiff (sic) thus re-file modified documents, and to document the false statements from Interested Party, and abuses from the Judge." In his Tenth Motion to Disqualify, Mr. Sides maintains that this closed case is "[s]till at the pretrial phase," now claiming to have evidence "that the amount of garnished wages Defendant did

return to Plaintiff's lawyer is not what Defendant claims in his answer."

Having considered all of the documents and papers filed in this closed adversary proceeding, the Court finds that the matter is ready for decision. This Opinion will be limited to the issue of disqualification. Other issues raised by the ten motions and in response thereto will be addressed in due course.

## II. Jurisdiction

The Court has jurisdiction over cases "arising under title 11, arising in, or related to cases under title 11" pursuant to 28 U.S.C. §1334. All bankruptcy cases and proceedings filed in the Central District of Illinois have been referred to the bankruptcy judges. CDIL-Bankr. LR 4.1; *see* 28 U.S.C. §157(a). Matters involving the administration of the estate and proceedings to recover preferences are core proceedings and may therefore be constitutionally decided by a bankruptcy judge. 28 U.S.C. §157(b)(2)(A), (F); *see Stern v. Marshall*, 564 U.S. 462, 499 (2011). There is no doubt that this Court had subject matter jurisdiction over the Debtor's underlying bankruptcy case and his preference action against FFB. This Court previously ruled that it did not have subject matter jurisdiction over the issues related to Mr. Sides' personal and professional breakup with Ms. Manuel raised in his Motions to Supplement. Those issues neither arise under title 11 nor relate to the Debtor's bankruptcy or the complaint against FFB. And in this closed adversary proceeding, this Court's jurisdiction—and the jurisdiction of any federal court—to hear the matters raised in the Omnibus Motion is highly questionable.

Sometimes overlooked in the context of bankruptcy cases is the overarching constitutional requirement that the jurisdiction of all federal courts is restricted

to "cases" and "controversies." U.S. CONST. art. III, §2, cl. 1; *In re Klinger*, 301 B.R. 519, 523 (Bankr. N.D. Ill. 2003). "To satisfy the case or controversy requirement, the dispute between the parties must be 'actual' and 'ongoing.'" *Klinger*, 301 B.R. at 523. Here, the Debtor's complaint against FFB was voluntarily dismissed on June 27, 2019, and the adversary proceeding was closed on July 12, 2019. Nothing further occurred until Mr. Sides filed his Omnibus Motion on August 16, 2019. By then, the time to appeal or seek reconsideration of the dismissal had passed. Fed. R. Bankr. P. 8002, 9023. More pointedly, the time for Mr. Sides to challenge the Court's conclusion in April that it did not have subject matter jurisdiction over the issues raised in his Motions to Supplement had long passed. The Debtor asked to withdraw his complaint based on a lack of resources. Taking his request at face value, the Court dismissed the case. There is no longer an actual and ongoing controversy between the Debtor and FFB, and, as a result, Mr. Sides' request for the Court to disqualify itself in this closed adversary proceeding is not based on or tethered to any pending or actual case or controversy.

The Omnibus Motion seeks to reopen this dismissed adversary proceeding and have the Court disqualify itself so that he can obtain "a finding that the Judge's unbridled bias against Plaintiff and Plaintiff's Counsel was primarily a function of the false statements fed to the Court by the Interested Party and/or her Counsel," and proceed on all prior requests for relief in the case. But reopening this adversary case must be premised on some realistic expectation that relief can be granted upon reopening, and the Debtor and Mr. Sides have wholly failed to suggest any basis upon which the voluntary dismissal might be vacated.

After the denial of Mr. Sides' Motions to Supplement the complaint, this

proceeding was headed towards trial. Yet the Debtor and Mr. Sides did not engage in discovery in anticipation of trial and, ultimately, asked to withdraw the complaint based on a lack of resources. The Omnibus Motion does not ask that the dismissal be vacated and does not seek any specific substantive relief that would result in the complaint being reinstated. Mr. Sides' request that the Court disqualify itself does not present a justiciable case or controversy, and, on that basis alone, the Omnibus Motion and the other nine Motions to Disqualify must be denied. Nevertheless, because the Court has a duty to address frivolous filings, the other issues raised by the Omnibus Motion and the other nine motions seeking disqualification will be addressed.

### III. Legal Analysis

*A. Recusal Standards*

Section 455(a) of Chapter 28 of the United States Code provides that "[a]ny justice, judge, or magistrate of the United States shall disqualify h[er]self in any proceeding in which h[er] impartiality might reasonably be questioned." 28 U.S.C. §455(a). As the Seventh Circuit has stated:

> Section 455(a) asks whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits. This is an objective inquiry. *Liljeberg v. Health Service Acquisition Corp.*, 486 U.S. 847, 865, 108 S. Ct. 2194, 2205, 100 L. Ed. 2d 855 (1988); *New York City Housing Develop. Co. v. Hart*, 796 F.2d 976 (7th Cir. 1986); *Pepsico, Inc. v. McMillen*, 764 F.2d 458 (7th Cir. 1985). An objective standard is essential when the question is how things appear to the well-informed, thoughtful observer rather than to a hypersensitive or unduly suspicious person . . . . Trivial risks are endemic, and if they were enough to require disqualification we would have a system of preemptory strikes

> and judge-shopping, which itself would imperil the perceived
> ability of the judicial system to decide cases without regard to
> persons. A thoughtful observer understands that putting
> disqualification in the hands of a party, whose real fear may be
> that the judge will apply rather than disregard the law, could
> introduce a bias into adjudication. Thus the search is for a risk
> substantially out of the ordinary.

*In re Mason*, 916 F.2d 384, 385-86 (7th Cir. 1990).

Section 455(b)(1) of Chapter 28 provides that a judge "shall disqualify" herself "[w]here [s]he has a personal bias or prejudice concerning a party . . . ." 28 U.S.C. §455(b)(1). The standard is an objective one that must be proved by compelling evidence. *Hook v. McDade*, 89 F.3d 350, 355 (7th Cir. 1996). And it "is with reference to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical and suspicious person that the objective standard is currently established." *Andrade v. Chojnacki*, 338 F.3d 448, 458 (5th Cir. 2003) (internal quotation marks omitted). Bias or prejudice "must be grounded in some personal animus or malice that the judge harbors against [the party seeking recusal], of a kind that a fair-minded person could not entirely set aside when judging certain persons or causes." *Hook*, 89 F.3d at 355 (citation omitted).

The Supreme Court has stated that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated . . . antagonism that would make fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 555 (1994). As the Court explained:

> [J]udicial remarks during the course of a trial that are critical
> or disapproving of, or even hostile to, counsel, the parties, or

their cases, ordinarily do not support a bias or partiality
challenge. They *may* do so if they reveal an opinion that derives
from an extrajudicial source; and they *will* do so if they reveal
such a high degree of . . . antagonism as to make fair judgment
impossible . . . . *Not* establishing bias or partiality, however, are
expressions of impatience, dissatisfaction, annoyance, and
even anger, that are within the bounds of what imperfect men
and women, even . . . federal judges, sometimes display. A
judge's ordinary efforts at courtroom administration—even a
stern and short-tempered judge's ordinary efforts at courtroom
administration—remain immune.

*Id.* at 555-56 (emphasis in original).

Thus, under both §455(a) and (b), the standard for determining whether
recusal is appropriate is an objective one. And "[a] necessary corollary to the
objective 'reasonable person' standard is that recusal may not be based on
frivolous, speculative, or irrational motions." *In re Nowak*, 143 B.R. 154, 157
(Bankr. N.D. Ill. 1992). Were a judge to recuse herself on unsupported, irrational,
or highly tenuous speculation, "the price of maintaining the purity of appearance
would be the power of litigants or third parties to exercise a negative power over
the assignment of judges." *M.K. Metals, Inc. v. National Steel Corp.*, 593 F. Supp.
991, 994 (N.D. Ill. 1984). Every court "has a duty *not* to disqualify itself when
faced with clearly frivolous motions to recuse." *Nowak*, 143 B.R. at 157 (emphasis
added).

"The decision whether a judge's impartiality can 'reasonably be questioned'
is to be made in light of the facts as they existed, and not as they were surmised
or reported." *Cheney v. U.S. Dist. Court for Dist. Of Columbia*, 541 U.S. 913, 914
(2004) (citation omitted). "The Court is not required to accept the movant's factual
statements as true." *In re Evergreen Sec., Ltd.*, 363 B.R. 267, 296 (Bankr. M.D.

Fla. 2007) (citations omitted). "Due to the very nature of the job, a judge must form an opinion about the merits of the case and occasionally the parties involved, but this does not constitute 'personal bias or prejudice,' and, therefore, disqualification should be viewed as an extraordinary occurrence." *In re Stoller*, 374 B.R. 618, 621 (Bankr. N.D. Ill. 2007) (citing *Tucker v. Kerner*, 186 F.2d 79, 84 (7th Cir. 1950)). "[T]here is no basis for recusal when a motion does not contain any detailed information to explain the claimed bias or prejudice and instead provides a barrage of conclusory personal attacks." *Id.* at 623.

Moreover, recusal under §455(a) or (b) generally "requires a showing of bias or partiality as to a party, not as to counsel." *In re Sanders*, 540 B.R. 911, 919 (Bankr. S.D. Fla. 2015). "To warrant recusal, bias or prejudice must be directed against a party and bias exhibited against an attorney will only merit recusal when it results in material and identifiable harm to that party's case." *Baldwin Hardware Corp. v. FrankSu Enterprise Corp.*, 78 F.3d 550, 557-58 (Fed. Cir. 1996), *cert. denied*, 519 U.S. 949 (1996). "Even apparent antagonism or animosity towards counsel must be of such character and intensity as to warrant a reasonable belief that the judge might not be able to impartially consider arguments in the case before the court." *In re Maurice*, 167 B.R. 114, 122 (Bankr. N.D. Ill. 1994). Again, this cannot be "merely inferred by the movant from unfavorable judicial rulings and court delays in ruling on pending matters." *Stoller*, 374 B.R. at 623. "Almost invariably, they are proper grounds for appeal, not for recusal." *Liteky v. U.S.*, 510 U.S. 540, 555 (1994).

The Omnibus Motion and nine other Motions to Disqualify filed by Mr. Sides and the Debtor, although voluminous, lack substance and citation to the record.

The motions are all filled with angry accusations but provide no basis by which a "well-informed, thoughtful, and objective observer" would find a case to compel disqualification. *Andrade*, 338 F.3d at 458. To the contrary, they are filled with "hypersensitive, cynical and suspicious" rhetoric that does not support disqualification. *Id.* The motions may all be rightly characterized as a "barrage of conclusory personal attacks" that cannot support disqualification. *Stoller*, 374 B.R. at 623.

The Debtor's main bankruptcy case was uneventful. The docket discloses that he filed all required documents, attended his creditors meeting, and received a timely discharge. Ms. Manuel filed two motions to avoid liens on personal property, which, in the absence of objection, were granted without the necessity of the Debtor appearing before the Court. The record in the case is devoid of anything that would even hint at a basis for the Debtor and Mr. Sides to claim prejudice or bias by the Court against the Debtor.

Likewise, Mr. Sides has no other cases pending before this Court, and, although he may have previously appeared before the Court on routine or uncontested matters, he has never appeared before this Court on a contested matter or one that required briefing or an evidentiary hearing. He cites to no prior cases or encounters with the Court that would support his allegations of prejudice or bias.

The Court's first encounter with Mr. Sides in a contested matter was the hearing on the Motion to Supplement on April 23, 2019. At that hearing, the Court denied the relief sought in the motions based on a lack of subject matter jurisdiction and also pointed out to Mr. Sides several procedural defects with his

filings. The hearing was conducted in accordance with the Local Rules. CDIL-LR 7.1(A). And, although the Court's denial of the Motion to Supplement was adverse to Mr. Sides, his remedy was to appeal or seek reconsideration, not to demand disqualification months later. *Liteky*, 510 U.S. at 555; *see also Stoller*, 374 B.R. at 621 ("Due to the very nature of the job, a judge must form an opinion about the merits of the case and occasionally the parties involved, but this does not constitute 'personal bias or prejudice[.]'").

To this day, and despite filing his Omnibus Motion and the nine other Motions to Disqualify, Mr. Sides has never provided any authority for his contention that this Court had subject matter jurisdiction to hear his disputes with Ms. Manuel. Thus, his motions do not even support a claim that the Court's rulings were in error, much less a claim that the rulings were based on bias or prejudice. His requests for disqualification come "out-of-the-blue" almost four months after the complained of decision, and after the Debtor took a voluntary dismissal of this adversary proceeding. The Omnibus Motion and the other Motions to Disqualify are based on Mr. Sides' unsupported suspicions and angry allegations and, accordingly, must be denied.

*B. Neither the Debtor's nor Mr. Sides' Constitutional Rights Have Been Violated.*

Mr. Sides complains that his, and presumably the Debtor's, constitutional rights to procedural due process have been violated in this proceeding. He cites no authority in support of that proposition, and his claims appear to be based on a misunderstanding of the law.

The Supreme Court, in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868

(2009), noted that "[i]t is axiomatic that a fair tribunal is a basic requirement of due process" but also recognized that "most matters relating to judicial disqualification do not rise to a constitutional level." *Id.* at 876 (citations omitted) (internal quotations omitted). One such circumstance might occur when a judge has a financial interest in the outcome of the case. *Id.* at 877. Another such circumstance that might occur—and has emerged in the criminal contempt context—is where a judge has no pecuniary interest at stake but is "challenged because of a conflict arising from his participation in an earlier proceeding." *Id.* at 880. Neither circumstance is present or even alleged here.

Mr. Sides' main constitutional contention is that the Court had a duty to disqualify itself upon the filing of his Omnibus Motion and that the Court's setting of a briefing schedule and its enforcement of Bankruptcy Rule 9037 after the Omnibus Motion was filed deprived him of procedural due process. But he is simply wrong. The setting of the briefing schedule provided an opportunity to be heard to the other parties potentially impacted by the Omnibus Motion. Mr. Sides cites no authority for his apparent proposition that other parties to this proceeding have no right to be heard. Additionally, he cites no authority for his apparent proposition that, once a disqualification request is made, a judge may not enforce the procedural rules related to motion practice and that practitioners such as Mr. Sides are free to ignore such rules. He cites no authority for the proposition that Bankruptcy Rule 9037 does not apply to motions seeking judicial disqualification or that this Court's enforcement of the Rule violated his constitutional rights.

Mr. Sides says that he was deprived of the opportunity to respond to Ms.

Manuel's Motion to Strike and Motion for Sanctions filed before the April 2019 hearing. But, in fact, he did file a response to her papers before the hearing. And he overlooks the fact that the Court denied all of the relief Ms. Manuel requested. The Court found that it had no subject matter jurisdiction over the family and partnership disputes of Mr. Sides and Ms. Manuel; it never reached any of the substantive issues raised in any of the papers. Further, the Court denied the Motion for Sanctions, finding that the provisions of Rule 9011, which require that a demand for withdrawal of an offensive document be made not less than 21 days before a sanctions motion is filed, had not been followed. Fed. R. Bankr. P. 9011(c)(1)(A). How Mr. Sides' rights were violated by all—or any—of this, when he essentially prevailed on Ms. Manuel's motions, has not been explained.

Mr. Sides also complains that he did not have a chance to argue his Motions to Supplement at the April 2019 hearing. But as discussed above, he did not follow the Local Rules in that regard. If he wanted to argue, he could have requested argument and identified the issues for argument. CDIL-LR 7.1(A). He has never properly requested argument before this Court for any of his motions and, accordingly, cannot complain that such arguments have not been scheduled.

Finally, Mr. Sides complains that his Fourteenth Amendment right to equal protection was violated when the Court denied his request to have the Clerk provide him with free copies of filed documents. He admits that his colleagues were not having the same issues he was experiencing in not seeing the file-stamp on the copies he received and therefore makes no claim that others have been provided the free copies which were denied to him. *See Reget v. City of LaCrosse*, 595 F.3d 691, 695 (7th Cir. 2010) (explaining that the first step under a class-of-

one analysis is to determine whether the movant was treated differently than others similarly situated). He ignores the fact that the Court's CM/ECF system is part of a national program and not something designed locally. He cites no evidence that anyone other than him—locally or nationally—was experiencing the problem. *See id.* His demand that the Court order the local Clerk to "fix" the system without evidence that the system was broken makes little sense. He was not denied equal protection under the law by being encouraged to consult with the Court's IT staff to determine the cause of his problem. Mr. Sides' allegations with regard to this issue consist of nothing more than unsupported suspicions. *Andrade*, 338 F.3d at 458.

Neither Mr. Sides nor the Debtor has been deprived of his constitutional rights in this proceeding. Their unsupported allegations of violations of such rights do not form a basis for disqualification.

### C. The Allegations of Mr. Sides and the Debtor are Based on Misstatements of Fact, Law, or Both

"The decision whether a judge's impartiality can 'reasonably be questioned' is to be made in light of the facts as they existed, and not as they were surmised or reported." *Cheney*, 541 U.S. at 914. Just because Mr. Sides and the Debtor have set forth a series of allegations, the Court is not required to accept those allegations as true. *Evergreen Sec.*, 363 B.R. at 296. The Omnibus Motion and the nine other Motions to Disqualify are almost totally devoid of any accurate citation to the record or legal authority.

Mr. Sides says that the Court could not be more wrong in suggesting that

it does not have subject matter jurisdiction over his family and partnership disputes with Ms. Manuel. But he cites no authority for that proposition. Federal courts have consistently held that family law matters, particularly those that pertain to the "domestic relations of . . . parent and child" belong in state courts. *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (concluding that the domestic relations exception precludes federal courts from entering custody decrees). Thus, Mr. Sides' complaints about Ms. Manuel's restriction of his access to their children belong in state court. Likewise, his complaints about Ms. Manuel relating to his laptop computer, his Dropbox files, and their law partnership files and assets all belong in state court. The dissolution of partnership issues are not related to the Debtor's preference action nor do they arise under the title 11, and, accordingly, the Court does not have subject matter jurisdiction to enter the orders requested by Mr. Sides. 28 U.S.C. §157(a). Mr. Sides' broad statement that the Court does have jurisdiction of these matters is a misstatement of the law and is simply wrong.

Mr. Sides also misstates the facts as they relate to the discussion of the same issues at the April 2019 hearing. The Court stated that the only "sliver" of the issues presented by Mr. Sides that might be related to the underlying preference action was actually a discovery issue regarding what documents Ms. Manuel might have that should be turned over to the Debtor for use in prosecuting his claim against FFB. The Court suggested that the Debtor—not Mr. Sides—might contact Ms. Manuel, who was still his attorney in his main bankruptcy case, and ask for his file. Mr. Sides' assertion now that this Court ordered him to contact Ms. Manuel directly, in violation of ethical prohibitions

against contacting a represented person, is just plain false. No such order was entered, and the Court's only comment related to the Debtor—again, not Mr. Sides—contacting Ms. Manuel. The Court also pointed out that, with the filing of the adversary proceeding, the Debtor and Mr. Sides had the ability to subpoena Ms. Manuel to obtain documents. Mr. Sides' misrepresentations regarding the Court's comments at the April 2019 hearing are not helpful to his case and undercut his claims against this Court.

The allegations Mr. Sides makes about the Court threatening him, intimidating him, and bullying him are also without factual support. During the April 2019 hearing, the Court implored Mr. Sides to stick to the facts of the Debtor's claim against FFB, and, at the May 2019 pretrial conference call, the Court pointed out that work needed to be done to move the case along. Without question, the Court has attempted to point out relevant legal and factual issues and to impress on Mr. Sides that it was his responsibility to investigate and prove the Debtor's entitlement to the relief sought in his complaint. But such comments do not warrant recusal. *See Stoller*, 374 B.R. at 621; *In re Haas*, 292 B.R. 167, 178 (Bankr. S.D. Ohio 2003). "Rather, such statements [are] consistent with the Court's responsibility to use its resources efficiently by flushing out the issues to be tried, focusing parties on the elements of their claims for relief, and ensuring effective presentation of evidence at the trial stage of the proceeding." *Haas*, 292 B.R. at 178. A reasonable person with knowledge of all the facts and circumstances would not consider the discussion of legal issues conducted by the Court in April and May 2019 as threatening, intimidating, or bullying. *Evergreeen Sec.*, 363 B.R. at 296; *Haas*, 292 B.R. at 178-80. Mr. Sides misrepresents what

-56-

was actually discussed at the hearings. Equally important, although he criticizes the Court's comments about the legal issues and calls the Court "ignorant" for making them, he cites absolutely no authority and makes no case that the Court's comments were anything other than accurate recitations about the current state of relevant law.

Mr. Sides also claims that the Court restricted access to his filings without explanation or otherwise improperly sealed them and that his multiple filings of documents was necessary because the Court has "an agenda to strike vast amounts of Plaintiff's argument[.]" Yet no document in this proceeding has been stricken from the record. Mr. Sides' assertion to the contrary is patently false. And while the Court did restrict electronic access to several documents filed by Mr. Sides, it did not do so without explanation. When Mr. Sides filed his original Motion to Supplement, the Court entered an order restricting electronic access and setting the matter for hearing on shortened notice. Prior to the hearing, Mr. Sides filed his Second Motion to Supplement, access to which was also restricted. At the hearing, the Court told Mr. Sides that access to the documents was restricted due to the inclusion of personally identifying information of his minor children. Nevertheless, Mr. Sides refiled the same documents as exhibits to his Omnibus Motion, redacting only the children's birth dates on one page. Several unredacted references to the children by name remained. Ms. Manuel then filed her Motion to Seal Document, pointing out that the children's names, as well as bank account and routing numbers, had not been redacted and therefore violated Bankruptcy Rule 9037. The Court again restricted electronic access and issued its Order to Show Cause why the document should not be stricken due to the

inclusion of personally identifying information. The Court ultimately dismissed the Order to Show Cause because Mr. Sides filed all of the documents again, finally redacting his minor children's names and his former partnership bank account number. Electronic access to the Motions to Supplement and Exhibit A of the Omnibus Motion remains restricted. Mr. Sides' allegation that his filings were "sealed" without explanation is simply untrue.

As Ms. Manuel pointed out in her Second Motion for Sanctions, Mr. Sides was required to check a box when filing his documents acknowledging that he was aware of and understood his obligations to redact personal identifiers in compliance with Bankruptcy Rule 9037. The notice makes specific reference to "dates of birth; names of minor children; and financial account numbers[.]" Mr. Sides obviously failed to heed the notice. It was Mr. Sides's responsibility, as an attorney practicing before the Court, to ensure that he was in compliance with all applicable rules, including Bankruptcy Rule 9037.

Interestingly, Mr. Sides continues to object to the Court dismissing its own Order to Show Cause after he filed the redacted versions of the documents. It is unclear what course of action he would have preferred. He clearly takes issue with the Court's comments and calls the entry of the order dismissing the Order to Show Cause illegal and criminal, but, as with most of his allegations, he cites no authority for revisiting it now. He points out no provisions of civil or criminal law that were violated by the entry of the dismissal order. Mr. Sides claims that, in its order dismissing the Order to Show Cause, the Court "makes the conclusion that she should remain on the case, but neither the law to which the Judge cites, nor the language she quotes from the caselaw (sic) allows for her disappointingly inane

logic." He further asserts that the "law has been repeatedly briefed to the Judge by the Plaintiff" and that the Court has ignored it. Neither of these statements is true. Again, in its order dismissing the Order to Show Cause, the Court, in response to Mr. Sides' successive motions to disqualify, explained that it had a duty to carefully consider the issue of recusal and that granting such a motion over-the-counter would be inappropriate. The Court reiterated that it was taking the matter under advisement. Mr. Sides apparently views this course of action as recusal refusal, but, contrary to his claim that he has "repeatedly briefed" the law to the Court, all ten of his motions seeking disqualification are practically devoid of citation to authority other than a boiler plate recitation of the recusal statute and a general reference to ethical codes for attorneys and judges.

Another example of Mr. Sides' hypersensitivity and his misstatement of facts and law relates to his response to the Court describing the motion he filed on August 16, 2019, as an "omnibus" motion. In his Third Motion to Disqualify, Mr. Sides says that the use of the term "omnibus" is evidence of the Court's "inability to maintain even an appearance of neutrality and her lack of desire to cease embarrassing the System." But, as noted in its order dismissing the Order to Show Cause, the term was not used in a pejorative sense and did not carry any negative connotation; it was used, as it generally is in the legal field, to describe "[a] motion that makes several requests or asks for multiple forms of relief[.]" *Omnibus Motion*, BLACK'S LAW DICTIONARY (11th ed. 2019). Mr. Sides points to no evidence to the contrary. He obviously did not like the sound of the term, misunderstood its use, and then angrily responded without any basis in fact or

law for doing so.[34]

With respect to his Motion for File-Stamped Copies, Mr. Sides claims, again with no basis in fact or law, that the denial of his request was done "illegally and with abuse." He insinuates that the file-stamp issue was a product of the Court's "desires to limit the voice of a party" by applying file-stamps to only those pleadings that "pleased the Judge" and then sealing those documents that did not please the Judge from the public view. He does not say, however, that any document upon which he could not view a file stamp on his computer was not actually file-stamped because, in fact, all of the documents he complains about remain in the public record with file-stamps. His allegations are no more than unfounded suspicions. Mr. Sides claims that the file-stamp issue had "a negative effect on the Plaintiff" without explaining how, given that the motion was non-substantive and filed after Mr. Sides had asked to withdraw the complaint and dismiss the action. Mr. Sides' accusations are wrong, purely speculative, and thoroughly without any basis in fact or law.

A final example of Mr. Sides' misstatements of the law relates to his request included in his Omnibus Motion for an extension of time to file an appeal of the Court's order denying his Motion to Supplement after the April 2019 hearing. In his Omnibus Motion, Mr. Sides mentions several medical problems he suffered in May and June 2019 but does not explain how those problems, which apparently occurred after the initial deadline to file a notice of appeal had passed, could

---

[34] A similar instance occurred when Mr. Sides responded to the Court's use of the phrase "[a]ccording to Mr. Sides," in the order entered June 27, 2019, denying him free file-stamped copies. He now looks back at that order and phrase and says that the Court was unnecessarily challenging his competence and credibility. Nothing in the record, however, suggests that the phrase was anything other than a benign introduction to a statement of Mr. Sides' request for relief.

justify a late filing. More importantly, he does not explain why he did not seek the extension when the case was pending or why he took a voluntary dismissal of the proceeding that effectively mooted the ruling he now wants to appeal. Instead, he claims that he represents the public interests of all residents of the State of Illinois and argues that the notice of appeal deadlines should be extended because "the population of Illinois is 12.74 million residents[,]" and "allowing just 1 second for each of Illinois' residents would create a limitation period of nearly 5 months, 147.45 days." Not surprisingly, he cites no authority for this creative calculation of the notice of appeal deadlines.

Most of the allegations in the Omnibus Motion and the nine other Motions to Disqualify have no basis in fact and are not supported by a review of the record. Many of the allegations are the result of hypersensitivity, cynicism, speculation, and suspicion and should not therefore form the basis for disqualification. *Andrade*, 338 F.3d at 458. And little, if any, legal authority is cited for the propositions set forth in the ten motions. The Omnibus Motion and the nine other Motions to Disqualify are not based on fact or law and must be denied.

### *D. Nothing in the Motions Establishes Any Prejudice Against the Debtor*

Recusal under  §455(a) or (b) for bias or prejudice generally "requires a showing of partiality as to a party, not as to counsel." *Sanders*, 540 B.R. at 919. And "[t]o warrant recusal, bias or prejudice must be directed against a party and bias exhibited against an attorney will only merit recusal when it results in material and identifiable harm to that party's case." *Baldwin Hardware*, 78 F.3d at 557-58. Mr. Sides' allegations are largely that he, rather than the Debtor, has

been wronged. To the extent he claims injury to the Debtor, he fails to allege any specific injury and does not explain how, for example, the Court's refusal to hear Mr. Sides' personal complaints against Ms. Manuel caused injury to the Debtor.

Mr. Sides claims that the Court's comments at the April 23 hearing were intended to "provoke Plaintiff's respectful Counsel into an outburst . . . or the remark was designed to create a record of false hostility from Plaintiff's Counsel[.]" He accuses the Court of "ordering" him to perform illegal acts and says the Court "twice ordered Plaintiff's Counsel to stand before the Bench for the 22+ minute event when Plaintiff's Counsel was, and is, enduring knee pain[.]" As explained previously, the record does not support Mr. Sides' claim of being ordered to do something illegal; there was no order, and the Court's comments were that the Debtor could ask Ms. Manuel for needed information or a subpoena could issue. But regardless, Mr. Sides' complaints today have nothing to do with the Debtor. The Debtor clearly had ways to get the information he needed, and Mr. Sides' unhappiness with the Court's rulings did not limit the Debtor's options in that regard.

Likewise, Mr. Sides' allegation that the Court has a "biased and likely self-interested motive for her attempt at sweeping this all under a giant rug" relates to his own personal issues with Ms. Manuel and has nothing to do with the substance of the Debtor's preference action against FFB. No documents were ever stricken, and it was the Debtor who voluntarily dismissed the proceeding.

Mr. Sides' complaints of being personally attacked pervade his Motions to Disqualify. In using the prepositional phrase, "According to Mr. Sides," in denying his Motion for File-Stamped Copies, and by using the term "omnibus" to refer to

Mr. Sides' first Motion to Disqualify that included other requests to reopen and extend time, the Court is alleged to have challenged Mr. Sides' competence and credibility. But this is all about Mr. Sides and his belief that he—and not the Debtor—was the object of abuse or impropriety.

To be sure, Mr. Sides does include several references to the Debtor and frames many of his accusations as being "attempts to drown the Plaintiff's voice with threats and intimidation" or the like, but those references are clearly in name only. For example, in his Omnibus Motion, he accuses the Court of chastising "the Plaintiff for bringing the issue of Court Officer misconduct by data theft of client files to the Judge's attention" and "verbally attack[ing] Plaintiff, Plaintiff's case, and/or Plaintiff's Counsel during a 22+ minute diatribe[.]" But the Debtor himself has never been chastised for bringing any matter before the Court. Rather, recognizing the driving force behind the Motions to Supplement and, now, the Omnibus Motion and nine other Motions to Disqualify, the Court has only admonished Mr. Sides for his own efforts to bring personal and extraneous matters into his client's adversary proceeding, which, after all, was an action to recover a preference from FFB.

Throughout his ten motions, Mr. Sides alleges that the Court is biased, partial, and prejudiced, or committed some malfeasance against the Debtor, the Debtor's case "and/or" Mr. Sides, conflating himself with the Debtor. In his Omnibus Motion, Mr. Sides states that "while Plaintiff's Counsel is personally distressed by the incessant discussion and threat of sanctions by the Judge, Defendant's Counsel, and the Interested Party, the Plaintiff has actually been harmed by the conduct described in this combined motion and is deserving of

-63-

relief" and that "[t]he Judge abused Plaintiff's Counsel with threats of discipline from both herself and third parties, intimidation designed to prevent Plaintiff from seeking further relief[.]" While it is clear that Mr. Sides feels as though he has been unfairly criticized, that criticism was based on his own actions unrelated to the Debtor's claims against FFB. Without any factual support, Mr. Sides claims that the Court's criticism was designed to and did result in harm to the Debtor, even though the Court's admonishments were limited to Mr. Sides and his handling of the case.

Mr. Sides also seems to lose track of on whose behalf he is seeking relief. In several instances, Mr. Sides refers to the Debtor, not as Debtor or Plaintiff, but as "Plaintiff's Counsel's client," as if forgetting that this is the Debtor's case and not his own. Elsewhere, Mr. Sides accuses the Court of "killing any hope that Plaintiff or his Counsel might have for a likelihood of gaining relief," as if he himself were now a plaintiff in the action. And throughout his filings, Mr. Sides characterizes his own actions as being those of the Debtor, defending, for example, "Plaintiff's filing" of personally identifying information and claiming that "Plaintiff *justly* criticizes" the Court in the Motions to Disqualify.

Despite Mr. Sides' references to the Debtor and his claims that his filings in this proceeding since April 2019 have been on the Debtor's behalf to address harms suffered by the Debtor, every filing has been all about Mr. Sides. The Debtor may very well have been impacted by what transpired here. But that would be a consequence of Mr. Sides' handling of matters and his attempts to bring the Court, FFB, and the Debtor himself, into Mr. Sides' own personal disputes with Ms. Manuel.

Generally, even a stern judge's ordinary efforts at courtroom administration remain immune from a bias or partiality motion. *Liteky*, 510 U.S. at 555-56. In order for the Court's criticism of Mr. Sides to serve as a basis for recusal, it "must be of such character and intensity as to warrant a reasonable belief that the [Court] might not be able to impartially consider arguments in the case before [it]." *Maurice*, 167 B.R. at 122. That is far from the case here. The Court implored Mr. Sides to stick to the facts of the Debtor's claim against FFB while the case was pending. Comments made to encourage parties and their attorneys to focus on the elements of their claim for relief do not warrant recusal; such comments are part of a court's responsibility to use its resources efficiently. *Haas*, 292 B.R. at 178.

At the pretrial conference held May 9, 2019, Mr. Sides admitted that, other than mailing the Debtor's responses to FFB's discovery requests to Mr. Richardson the day before the conference, he had not engaged in any discovery, including making the mandatory disclosures required under Rule 26. Fed. R. Civ. P. 26; Fed. R. Bankr. P. 7026. At that time, the Court stressed to Mr. Sides that he needed to investigate his client's claims and that, if he was not prepared to go to trial by the next pretrial conference date, he would likely be facing a motion for summary judgment and sanctions from FFB. Of course, the Court never actually learned whether there was any merit to the Debtor's preference claim against FFB because Mr. Sides filed his Motion to Withdraw Complaint the day before the continued conference date. Other than granting his motion to withdraw the complaint, dismissing the case, and denying his request for file-stamped copies of documents, the Court took no further action in the proceeding prior to its closing.

If anything, the Court's comments about the merits of the action and Mr.
Sides' handling of it were for his and the Debtor's benefit. Mr. Sides is, admittedly,
unfamiliar with the procedures of and practice before this Court. Although every
attorney practicing before the Court is expected to be familiar with local
procedures and his or her own professional obligations, Mr. Sides was repeatedly
given the benefit of doubt, and he has never been sanctioned for his failure to
comply with his obligations. Instead, Mr. Sides was admonished where
appropriate and advised on potential problems with the Debtor's case. The Debtor
was not prejudiced by the Court's comments, and Mr. Sides has established no
basis for recusal or disqualification.

### E. Mr. Sides' Motions Only Purpose is to Harass or Embarrass the Court, Ms. Manuel, and Others

Mr. Sides' Omnibus Motion and his nine other Motions to Disqualify are
wholly without merit and are not supported by the record or any citation to
authority. The only purpose that they serve—and apparently were intended to
serve—is to harass or embarrass the Court, Ms. Manuel and her attorney, and,
to some extent, FFB's attorney, Mr. Richardson.

In his Omnibus Motion, Mr. Sides attacks the Court's decision announced
at the April 23 hearing, calling it a "polemic" and a "harangue," all the while
describing the Court as ignorant, "blatantly biased/prejudiced," and "mak[ing] a
mockery of her office," being "a scourge upon the Profession," and "embarrass[ing]
the larger Judiciary." In his Second Motion to Disqualify, Mr. Sides accuses both
the Court and Ms. Manuel of violating the law, stating that Ms. Manuel "executed

a slew of crimes upon Plaintiff's Counsel . . . ." In his Third Motion, Mr. Sides points to the Court's use of the term "omnibus" as evidence of its "lack of desire to cease embarrassing the System[,]" and similarly, in his Fourth Motion, claims there is "no boundary as to when she will cease embarrassing the Federal Judiciary[.]" In complaining in his Fourth Motion about how he fails to see how disclosing client names and information could lead to potential embarrassment, Mr. Sides contends that Ms. Manuel's attorney "may have superior insight from his own personal filing for bankruptcy relief."[35]

In his Fifth and Sixth Motions, Mr. Sides continues to accuse the Court and Ms. Manuel of violating the law, claiming that anything he is alleged to have done "pales in comparison to the Judge's misconduct[.]" He accuses the Court of "manufacturing" or "concocting" stories about him in retaliation for reporting the Court to authorities and says "[t]here is no limit to the Judge's willingness to misuse the powers of her office including the criminal use of false statements as she continues to threaten Plaintiff, Plaintiff's case, and Plaintiff's counsel."

Mr. Sides says that the Court is "dishonorable," lacking in "professional self-control," "unhinged," and "dangerous," and claims that the Court "recklessly brings infamy to her office." He also contends that the Court must "resign and disgorge her earnings taken from the taxpayers during her abuse in office." In his Seventh Motion, Mr. Sides says he "cannot imagine anyone else abusing and thus embarrassing his/her office like the present Judge."

---

[35] Of all of Mr. Sides' angry and vitriolic statements, his comment about Ms. Manuel's attorney having previously filed a personal bankruptcy is the most troubling. The comment has absolutely no possible connection to the Debtor's interests and, accordingly, can only be described as purposely mean-spirited. Clearly, the comment was made with no purpose other than to harass and embarrass Ms. Manuel's attorney.

In his Eighth Motion to Disqualify, Mr. Sides describes FFB and its attorney as "stroking the Judge's ego" and calls its arguments "illogical," while continuing to accuse the Court of making "a mockery out of this case." In the Ninth Motion, Mr. Sides accuses the Court of lying, holding a personal vendetta, and of using "disappointingly inane logic." Again, he claims that "[t]he Judge's acts embarrass the legal community and are an insult to her peers who do hard work daily without using the authority of the United States to abuse its citizenry."

In his Tenth Motion to Disqualify, Mr. Sides describes the Court's handling of the case as "atrocious" and "criminal." He says that Ms. Manuel "is eager to allow this litigation to become a more and more malignant cancer upon the Judiciary as the abusive Judge who apparently knows nothing but to double-down on her misconduct with continued, increaseingly (sic) fierce abuse and false stories about Plaintiff's counsel and digs a deeper abyss of case corruption." He claims that the Court "thinks she is above the law" and says that both the Court and Ms. Manuel have perjured themselves. Mr. Sides even says that "the Judge is not mature enough to handle the criticism the Judge brought unto herself by the Judge's own illicit acts."

Mr. Sides further accuses Ms. Manuel of abusing "this case for personal gain" and engaging in "intentional trickery of the Judge, perpetuating a fraud on the Court, [and] deceiving the Judge." He criticizes Ms. Manuel for not being able to "articulate her position" in a "comprehensible" manner and says that her arguments are "either desperate or a sad signature of mental impairment," describing her efforts as "evidence of a mental status unbecoming a competent attorney." At points, Mr. Sides refers to Ms. Manuel as a "thief," a "computer

-68-

tamperer," an "unlawful deleter of stored data," a "perjurer," and a "court defrauder." According to Mr. Sides, "the Judge, Interested Party and her counsel chose a public forum to seek to commit illicit and disreputable acts . . . , like fraud and intentional submission of false statements[.]"

All of this vitriol stems from the denial of Mr. Sides' Motions to Supplement the Debtor's preference complaint against FFB to add a claim against Ms. Manuel based on accusations of destroying Mr. Sides' relationship with his children and of theft of his personal property, as well as his client files related to the couple's legal partnership. Mr. Sides apparently believes that, because one of the client files that he wants pertained to the Debtor's adversary proceeding, he was entitled to add Ms. Manuel as a defendant in this proceeding and to add entirely unrelated claims to the case. But, as the Court explained previously, it does not have subject matter jurisdiction to hear the matters asserted by Mr. Sides.

Section 1334 confers jurisdiction on the district courts over cases "arising under title 11, arising in, or related to cases under title 11." 28 U.S.C. §1334. Mr. Sides' claims against Ms. Manuel are neither a case arising under title 11 nor a case arising in or related to a case under title 11. The Debtor's underlying bankruptcy was a case arising under title 11. His preference claim arose in and was related to his bankruptcy. Mr. Sides' allegations against his former personal and business partner, Ms. Manuel, however, neither arose in nor were related to the Debtor's bankruptcy case. The Seventh Circuit holds a narrow view of "related to" jurisdiction, which exists only over matters when they affect "the amount of property for distribution [from the estate] or the allocation of property among creditors." *In re FedPak Systems*, 80 F.3d 207, 213-14 (7th Cir. 1996). Mr. Sides'

claims against Ms. Manuel do neither. Resolution of Mr. Sides' claims against Ms. Manuel would have no impact on the amount of property available for distribution or how property is allocated among creditors. Mr. Sides has never, in any of his many motions, cited any authority that is even remotely contrary to the Court's position on subject matter jurisdiction.

Nevertheless, Mr. Sides has been aggressive in his efforts to bring his personal business into the Debtor's adversary proceeding. Mr. Sides has refused to accept that his filing was denied for the reasons expressed—that the Court does not have subject matter jurisdiction. Yet, rather than appeal or ask the Court to reconsider the denial of his motion, Mr. Sides did nothing to challenge the April 2019 ruling and eventually asked to withdraw the Debtor's complaint against FFB. Only after the complaint was dismissed and the proceeding was closed—leaving no pending case or controversy—did he begin filing his rash of disqualification motions. There can be no purpose under such circumstances other than to attempt to harass and embarrass.

The harassment is pointed. Apparently unable to let go of his animosity toward Ms. Manuel and unable to obtain the recourse from this Court that he believed he was entitled to, Mr. Sides resorted to lodging harassing and derogatory, not to mention unsubstantiated, allegations against the Court and Ms. Manuel. But Mr. Sides asked to dismiss the adversary complaint, thereby making the Court's prior rulings moot and undercutting his attempt to now circle back and obtain relief. It is unclear why he dismissed the proceeding if he wanted to pursue the action. But it is clear that Mr. Sides is angry. And his attacks on the Court and others after asking to withdraw the complaint and allowing the

adversary to close show that the only purpose of his ten motions is to harass and embarrass the subjects of his ire. In his Omnibus Motion, Mr. Sides does not seek any substantive relief. He merely asks the Court to reopen the adversary, extend the time for filing a notice of appeal, and disqualify itself. He does not ask the Court to vacate any prior orders and makes no showing that there would be any basis to vacate any prior orders. Importantly, he does not address the fact that the case was dismissed on his motion and provides no argument that the dismissal should be vacated.

Absent any argument that any meaningful relief is requested by or available to the Debtor, there can be no reason for the filing of the ten motions other than to harass and embarrass. But an angry barrage of personal attacks cannot support disqualification and provides no basis for the granting of any of the pending motions. *Stoller*, 374 B.R. at 623.

## IV. Conclusion

This proceeding began as a collection action for a modest preference claim. After filing, however, the Debtor and Mr. Sides were notified by FFB that, although over $900 had been garnished from the Debtor's wages during the 90-day period before the bankruptcy filing, FFB claimed to have received less than $600 of that amount. That information placed a burden on the Debtor and Mr. Sides to investigate the factual claims of their complaint. Obviously, the Debtor's employer was the entity with the information about how much of the garnished funds had actually been sent to and received by FFB. Nevertheless, it appears that neither the Debtor nor Mr. Sides ever sought the information from the employer. Instead,

the proceeding was sidetracked by Mr. Sides' personal disputes against Ms. Manuel. And a voluntary dismissal was ultimately taken by the Debtor before the contested issues of fact and law could be reached. Now, long after the dismissal, the Debtor and Mr. Sides have filed ten motions seeking to disqualify the Court and blaming everyone but themselves for the result here.

In considering the ten motions, the standard for disqualification "is with reference to the well-informed, thoughtful and objective observer[.]" *Andrade*, 338 F.3d at 458. There is little in the ten motions that can be characterized as thoughtful or objective. And because much of what is alleged is not based on the facts in the record or relevant authority, the motions cannot be described as well-informed. Rather, the motions are based on angry emotions and allegations grounded in hypersensitivity, cynicism, and suspicion—all inadequate to meet the required standards.

Mr. Sides principally complains about the Court's rulings and comments with respect to the Motions to Supplement, restricting access to his filings under Rule 9037, and admonishing him regarding his prosecution of the underlying preference action. But nowhere in any of the motions does he cite any authority that the Court's rulings or comments were in error or even questionable. He cites nothing to suggest that the Court has subject matter jurisdiction over his family and law partnership disputes with Ms. Manuel. He cites no authority that Rule 9037 does not apply to him or in these proceedings. He cites nothing in support of his claims that the Court is ignorant about the laws governing the recovery of preferences or that the Court's comments reflected anything other than an appropriate discussion of issues involved in preference recovery. Having failed to

make the case that any of the Court's decisions were in error, he wholly fails to make the case that the rulings and associated comments were based on bias or prejudice. And, even if Mr. Sides believed that an error had been committed, the remedy for that was appeal, not requesting disqualification after a voluntary dismissal and case closure.

Mr. Sides is angry, and the Court is not unsympathetic to the struggles he—and Ms. Manuel—are experiencing as they work through their personal and professional breakup. But personal difficulties do not excuse the filing of ten motions full of angry, over-the-top, unsupported allegations against the Court and Ms. Manuel. All of the motions seeking disqualification will be denied because they are not supported by fact or law.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###